## Himes *against* Keller.

A surety, who pays the debt of the principal, is not entitled to substitution to the rights and remedies of the creditor as against his co-surety, by reason of any consideration which existed between the principal debtor and the co-surety for his entering into the original obligation; especially when there are intervening creditors whose rights would be affected by making the substitution.

ERROR to the Special Court of Common Pleas of *Cumberland* county.

George Himes against Jacob Keller.

This was an issue directed to try the right to the proceeds of the sale of the real estate of Peter Ege, in the hands of the sheriff. The plaintiff in error was the plaintiff below, and claimed the whole amount of a judgment: John H. Weaver *v.* George W. Woodburn, Peter Ege and Joseph A. Ege, for $2950.

John H. Weaver sworn.   George W. Woodburn was indebted to me to that amount, and he gave me Peter Ege and Joseph A. Ege as security in the judgment in dispute.

When Woodburn and I talked about the judgment, he alleged that the " Pine Grove" establishment was indebted to him, and therefore he could ask them to go as security to me; as to any arrangement between Ege and Woodburn themselves, I know nothing about it.

9th November 1836, Joseph A. Ege paid on account of the judgment to the plaintiff $350; 16th of January 1837, Joseph A. Ege paid on account of it $1250; 12th of April 1837, George Himes paid on account of it $1500.   And the same day Jos. A. Ege paid $60.16, which was the whole balance due, and then the whole judgment was transferred to George Himes, the present plaintiff, in pursuance of an arrangement between him and Joseph A. Ege, and with the consent of Peter Ege in writing, which was given in evidence, as follows:

" John H. Weaver, for use, &c., *v.* George W. Woodburn, Peter Ege, and Joseph A. Ege.   In this case I executed this judgment in consequence of my indebtedness to George W. Woodburn, and Jos. A. Ege was a surety.  Now, in consideration of George Himes's

III. — 51          21*

paying the amount of the judgment in order to relieve my real estate, which has been levied by virtue of a *fieri facias* upon the same, I agree that the judgment shall be considered as against me as a principal, and that I have no defence to the payment of the same.

Witness my hand, the 25th of April 1837,          PETER EGE.

    Tes:—JOSEPH A. EGE."

The arrangement between Joseph A. Ege and George Himes was, that if Himes would pay the $1500 in the judgment, and take an assignment of that amount, Joseph A. Ege would assign to him the other part of the judgment, which he as a surety had paid, in consideration of Himes's giving up to him certain notes of his which he held.

The defendant admitted the right of the plaintiff to recover $1500 of the judgment which he paid, but no more.

Joseph A. Ege sworn.   Peter Ege went into the judgment in consequence of his indebtedness to George Woodburn.   George Woodburn and Weaver were carrying on a store in Newville. At the same time, George and John M. Woodburn were carrying on in Carlisle, &c.   In 1834 George and John M. Woodburn came out for the purpose of settling their accounts with Peter Ege. After, the accounts were settled, but not finally closed.   The object of a settlement was, to get this bond from Peter Ege.   While carrying on the business at Newville, Woodburn's funds were vested in the store here, and there were debts owing in the city by Woodburn and Weaver.   They had dissolved partnership.   There was an agreement entered into between Woodburn and Weaver, whereby Weaver was to pay the debts in the city.   After we had got through the settlement, I found there was a large balance coming to the store in this place, the half of which George Woodburn would have a right to receive.   He requested this judgment from my father, that Weaver and he were likely to make an arrangement about the city debts.   I went to the house; my father was at the house.   I stated to my father what Woodburn would wish to have done.   He hesitated about signing.   I told him it would make no difference, he would eventually have to pay Woodburn the money.   He agreed to sign it.   George Woodburn requested me to go in the bond.   I declined at first.   He said unless I went in, Weaver would not go into the arrangement; he was a queer man, and would have things as he wanted.   We all signed the bond, Woodburn, my father, and myself.

The paper of the 27th of March 1837, was given to George Himes before he took the assignment of the judgment.   The body of it is in my handwriting.   I was present when the assignment was made to George Himes, and received from him the other portion of the judgment.   I paid $60.16 more than the $1500; the whole amount of the judgment was assigned.

So far as John M. Woodburn was concerned, they were

[Himes v. Keller.]

assigned. George Woodburn claimed the right to settle his own portion. Mr Himes gave me up a note he held against me for $700, and two due bills, which would amount to from 3 to $400. That is a statement of the amount I received from Himes. The $402 was paid me. All he agreed to give for the judgment, was the $1500. I agreed to let him have the judgment for that sum. That is a calculation of the receipts given.

The court below (Parsons, President) instructed the jury that all the facts given in evidence did not entitle the plaintiff to substitution to an amount exceeding that which he actually paid.

*Biddle* and *Watts*, for plaintiff in error. The character which the parties to a contract bear to. each other and the creditor, depends upon the consideration which induces them to enter into it. A principal is so, because he enters into the obligation by reason of indebtedness; and the surety is so, because he receives no valuable consideration. The application of this rule to the facts of this case, makes Peter Ege the principal; and as between the parties themselves, George W. Woodburn and Joseph A. Ege are mere sureties. The fund which was to pay the debt, was known and acknowledged to be in the hands of Peter Ege, with whose consent the present plaintiff takes an assignment of the judgment as against him. What has a subsequent judgment creditor of Peter Ege to do with this ? He took his judgment subject to this one, which he now seeks to avoid, in violation of the plainest principles of equity between the parties themselves. 2 *Rawle* 132; 9 *Watts* 455; 4 *Watts* 31; 17 *Vez.* 514; 4 *John. Ch.* 17.

*Graham* and *Alexander, contra,* argued that the proof did not establish the fact that Peter Ege was a surety; but on the contrary, that the original contract was between Weaver and Woodburn, and that Peter and Joseph Ege were sureties. What difference can it make that reasons existed why Peter Ege should become the surety of Woodburn? That would not alter the nature of the contract of the parties. The relation of principal and surety grows out of the contract itself, and not out of other transactions which they have had between them. It would not be equitable, that, after subsequent judgments are obtained against Peter Ege, he should enter into such an arrangement as would give him a different character from that which the original transaction gave him. Chancery will never interfere to grant substitution in a doubtful case. 4 *Johns. Ch.* 17. But the principles contended for by the plaintiffs in error, are fully considered and repudiated in 3 *Penn. Rep.* 200.

The opinion of the Court was delivered by

SERGEANT, J.—The question is whether, considering Himes as Joseph A. Ege's representative, he has the right to claim the whole

[Himes v. Keller.]

amount of this judgment, or only one-half; or in other words, whether P. Ege is to be considered as principal or co-surety.

The principle has been adopted by courts of chancery, that a surety in a bond or other security, paying it to the creditor, is entitled to a cession of the debt, and a substitution or subrogation to all the rights and actions of the creditor against the debtor; and the security is treated as between the surety and debtor, as still subsisting and unextinguished. 1 *Story's Eq.* 590. The right is based on the principles of natural justice and equity, 4 *Johns. Ch.* 130; 1 *Watts & Serg.* 157; and it has been frequently recognised by this court. *Goswiler's Estate,* (3 *Penn. Rep.* 203); *Erb's Appeal,* (2 *Penn. Rep.* 296); 1 *Watts & Serg.* 420. Were the question here merely between Joseph A. Ege, or his representative, and Peter Ege, there could be no difficulty in treating Peter Ege as principal; because he has himself asserted it by the writing of the 12th of April 1839; or perhaps without this, less strictness might be required as between themselves. But it seems there are intervening creditors of Peter Ege, whose rights would be affected by making this substitution now; and it has been held by this court, that a substitution which will work a prejudice to other creditors, not parties to the arrangement, will be made only in a clear case. *Goswiler's Estate,* (3 *Penn. Rep.* 203). In the case before us, it is a matter of doubt in what light Peter Ege was to be considered before those judgments were rendered—whether as co-surety or principal. It appears that it was in consequence of his being indebted to Woodburn, that he signed the bond; but though this may have been his motive, yet there was no agreement or understanding between him and Woodburn, what was to be the effect of his signing this judgment. It does not appear it was to be an extinguishment of Woodburn's claim against him, or that Woodburn released him. On paying Woodburn's debt, he might perhaps have claimed against Woodburn the rights of a surety. His position, to say the least, was equivocal, liable to shift according to subsequent circumstances. We think the case is therefore not one in which the equity of substitution is so clear that it ought to be applied.

Judgment affirmed.