## Douglass's Appeal.

*Distribution of proceeds of sheriff's sale.—Claims of lien-creditors remain as at time of sale.—Payment to sheriff extinguishes lien of judgment.— Priority of claim not affected by decree of subrogation.*

1. In distributing the proceeds of a sheriff's sale, the rights of claimants must be determined as they were at the time of the sale, the liens being divested by the sale, the lien-holders are turned over to the proceeds, and no lien or right thereto can be afterwards acquired.

2. Upon a judgment of C. against M. and W. an execution was issued in 1862, on which the sheriff returned "money made," and plaintiff's attorney endorsed a receipt for debt and interest in full. Real estate of M. was sold at

[Douglass's Appeal.]

sheriff's sale in 1864, under a subsequent judgment obtained by D. against him. After the sheriff's sale W., alleging that he was security for M., obtained an order of subrogation to the rights of the plaintiff, C., without notice to D. *Held*, that C.'s judgment had no legal existence after the payment to the sheriff, and that the order of subrogation did not affect the *priority* of the claim of D. on the fund arising from the sale of the real estate of M.

APPEAL from the Common Pleas of *Armstrong county.*

This was an appeal by James Douglass, administrator of J. M. Moore, from the decree of the Common Pleas distributing the proceeds of the sheriff's sale of the real estate of Thomas McMasters.

The case was this :—

Robert Coulter entered up a judgment on the 3d of September 1861, against Thomas McMasters and William G. Watson, for $225.25.

James Douglass, administrator, entered up his judgment, October 30th 1861, against Thomas McMasters and David Beatty, for $585.56.

Coulter issued a *fi. fa.* to June Term 1862, against the defendants, which was returned by the sheriff, receipted by the plaintiff's attorney for debt and interest, and with the sheriff's endorsement, "money made."

Douglass issued an execution to December Term 1863, and a levy was made on McMasters's real estate, which was sold upon a *venditioni exponas* to March term 1864. The sale took place January 30th 1864, and on behalf of the sheriff and purchaser, an auditor (Grier C. Orr) was appointed to distribute the proceeds of the sale.

William G. Watson made application to the court, February 1st 1864, as surety of McMasters, for subrogation to the rights of Coulter, in his judgment. The subrogation was made on mere motion, without petition or affidavit of Watson, and without any evidence, except the admission of McMasters, to show that he was entitled to subrogation. On the strength of this substitution, Watson claimed the amount of the Coulter judgment. Douglass also claimed the money, to the exclusion of the Coulter judgment, the fund not being sufficient to pay both. The auditor distributed the fund to Douglass's judgment. Watson excepted. The court sustained the exception, reversed the report of the auditor, and decreed the money to the Coulter judgment—which, with the decree for subrogation, were the errors assigned.

The case was argued in this court, by *Golden & Barclay*, for appellant.

The defendant's counsel presented no printed argument.

The opinion of the court was delivered by

STRONG, J.—In the distribution of the proceeds of a sheriff's

[Douglass's Appeal.]

sale, the rights of those claiming to participate are to be determined as they were at the time the sale was made. Such a sale divests whatever liens are upon the lands at the time, and the lien-holders are turned over to the proceeds. No lien upon the fund, and consequently no right to participate in its distribution, can be acquired afterwards. These are familiar principles, and they are applicable to this case. The sheriff's sale of the real estate of Thomas McMasters, was made on the 30th day of January 1864. At that time the judgment of Robert Coulter against McMasters and Watson appeared from the record to have been satisfied. An execution had issued upon it to June Term 1862, to which the sheriff had returned "money made." There was also endorsed a receipt of the plaintiff's attorney for the debt and interest in full. Thus the judgment was paid, and at law, certainly, it no longer had any existence. The next judgment to Coulter's was that of the appellant, under which the property was sold. It was not until the 1st of February 1864, after the sheriff's sale, and nearly two years after Coulter's judgment against McMasters and Watson had been satisfied, that Watson went into court, representing that he had been a surety of McMasters in that judgment, and as such had paid it, and obtained an order that he should be subrogated to the rights of the plaintiff. The order was made without any notice to Douglass, the next judgment-creditor of McMasters. It was upon this state of the record that the court below decreed that out of the fund now in court for distribution, arising from the sale of Thomas McMaster's estate, Watson should take the amount of the Coulter judgment to the rights of the plaintiff in which he was subrogated on the 1st of February 1864, after the sheriff's sale. We think the decree was erroneous. Whatever may have been Watson's equity against McMasters by virtue of the contract of suretyship, he could not enforce it to the prejudice of Douglass, after the sheriff's sale. Even the order of subrogation made, on the day after the sale, made him but the holder of an equity, and such an one as will not be enforced when thereby injustice will be done to the rights of others. It is a settled principle that the holder of an equity must be vigilant in asserting it, if he would have the aid of a chancellor. Laches in such a holder will always postpone him to one who may have been injured by his inertness. But here Watson, after having paid the judgment against his principal, remained quiet nearly two years without any assertion of his secret equity. He permitted the record to show continuously during all that period that the judgment of Coulter against his principal was paid. While thus inactive, the sheriff's sale of the debtor's property took place. Thus the appellant was thrown off his guard by the state of the record. It was his right to assume that the judgment of Coulter was no

12 WR.—15

[Douglass's Appeal.]

longer in existence, and either refrain from bidding at the sale, or regulate his bid accordingly. It is not to be permitted that a secret equity may be held unasserted until holders of legal rights have lost an opportunity to protect themselves against it, and then brought forward to the injury of those who had no knowledge of its existence. It is insisted, however, that the decree of the court ordering the subrogation of Watson to the rights of Coulter was conclusive upon the auditor, and also upon all claimants to the fund for distribution. But of what was it conclusive? Not, surely, of the claim that Coulter's judgment was a lien upon the land of McMasters when the sheriff's sale was made. It was doubtless an adjudication, that Watson had a right, as against his principal, to use the judgment, but it gave to him no right at law. Notwithstanding the decree he was but the holder of an equity. The decree of subrogation is only a form; it is the right to subrogation which is the substance. After the 1st of February 1864, Watson was, therefore, in no better situation than he was before. His equitable right was liable to postponement because of his laches, as fully as if subrogation had never been decreed. Consequently an award of the fund in court was no attack upon what the court had done. It left the decree of subrogation untouched. Hence, there was nothing to preclude the appellant from asserting his claim to the fund in preference to any equitable claim of Watson.

The decree of the Court of Common Pleas is reversed, and it is ordered that the fund in that court be distributed according to schedule A, reported by the auditor, and it is further ordered that the costs of this appeal be paid by William G. Watson, the appellee.