EMERSON H. EATON, PLAINTIFF IN ERROR, v. CHARLES HASTY, DEFENDANT IN ERROR.

6 419
17 266
22 312

6 419
37 390

6 419
44 69

6 419
54 219

6 419
59 173

1. **Judgment**: REVIVAL OF. A judgment of revival is merely a continuation of the original action, and continues the vitality of the original judgment with all its incidents from the time of its rendition.

2. **Principal and Surety**: RIGHTS OF SURETY. Subrogation is purely an equitable result, and the right of a surety to be subrogated to the rights of the creditor does not depend on contract, but rests alone upon principles of justice and equity; and when such claim is contested, it depends on facts to develop and determine the rights of the parties in interest.

3. **Foreign Judgment.** The judgment of a state court duly authenticated, as prescribed by act of congress, is conclusive upon the merits or subject matter of the suit.

4. ———: PLEAS IN BAR. But want of jurisdiction, or release, or payment, or limitation by statute, or common law prescription, or fraud, is a good plea to an action brought upon a foreign judgment; and it is error to reject evidence tending to prove such defenses.

ERROR from the district court of Cass county. The cause came to this court in 1868, the judgment below being reversed, and cause remanded for a new trial. It is reported 1 Neb., 339. Maxwell's Digest, 395. The cause was again tried before LAKE, CH. J., and resulting in a verdict in favor of Hasty, Eaton, the defendant below, brought the case up by petition in error in 1872. Judge Lake having sat in the court below, and Judge Maxwell having been of counsel, the cause was continued from term to term until, by agreement of the parties, it was submitted at the present term.

*Sam M. Chapman* and *E. Wakely*, for plaintiff in error.

Defendant in error admits that Eaton was in Nebraska

and knew nothing of the revivor at the time it was obtained. We think that Eaton was not bound to anticipate the litigation of his own and his co-defendant's partnership affairs upon a motion to revive a judgment that had been sleeping for over ten years; that had rested upon the records of a court of common pleas in Ohio for over fifteen years. Surely, then, unless the clear warrant can be found in the law conferring upon the court of common pleas this extraordinary power, such a proceeding being entirely outside of and beyond the *scope* or *intention* of the law (unless it appears that the court had the parties before it *present and consenting*) would be void. What does "revival," in the sense used in the code, mean? Simply to put in force a *dormant, inactive, sleeping* judgment. Can it mean a *different* judgment? Can it mean a judgment with new parties? Here the parties are changed; here the creditors, Lambert & Edmunds, after relying upon a judgment five years alive, ten years dead, then *resurrected*, are to be turned around by the court of common pleas and to rely upon Eaton as principal and Hasty as security merely. This was a judgment by the law in force, clearly in the hands and in the keeping of plaintiffs, Lambert & Edmunds. A court of competent jurisdiction in the year 1847 *must now be presumed* to have passed upon Eaton & Hasty's rights and upon their relations with Lambert & Edmunds. At this *second day of judgment* can it be pretended that the relations of these defendants to their judgment creditors is to have a second overhauling? Would it be pretended that there is any warrant in the law authorizing such a change over the objections of Lambert & Edmunds? Is there anything in the record showing such consent? Even if Eaton and Hasty had both been consenting parties to it, we think the absurdity of such a proposition is apparent. Again, the record of the pretended judgment shows that the court found all these

Eaton v. Hasty.

equities in favor of Hasty before the order of revivor was pretended to be entered, and in our view of this case (giving every question of doubt to defendant, Hasty) in any event, before any adjudication could take place between him and his co-defendants, the legal judgment as it then existed would have had to be revived. As it now appears there is, in our view of the case, no legal revival. The old judgment still sleeps on.

This judgment of revivor is clearly beyond the scope of the law in force in Ohio at the time of its pretended rendition. Clearly the court had no such jurisdiction over the defendant, Eaton, or the subject matter as would authorize such a proceeding. The want of jurisdiction appears there on the face of the judgment, and the plaintiff in error, such being the condition of the judgment, should have been allowed to show that the judgment was rendered without his knowledge, without any issues being made, and is fraudulent and void. *Lazier v. Westcott*, 26 New York, 153. Want of jurisdiction of the subject matter renders the proceedings of a judicial tribunal void in the broadest sense of the term. 29 Wis., 419. *Dudley v. Mayhew*, 3 N. Y., 9. *Borden v. Fitch*, 15 Johns., 121. *Ragan's Estate*, 7 Watts, 438. *Shawhun v. Loffer*, 24 Iowa, 217. When the court transcends the limits prescribed by law, and assumes to act when it has no jurisdiction, its adjudication is absolutely void. *Ponce v. Underwood*, 55 Ga., 601. In an action upon a judgment which is sought to be made the basis of a new recovery it is permissible to show that the court rendering the judgment had no jurisdiction, notwithstanding a recital in the judgment that the defendant was duly and legally served with notice of the pendency of the suit, and when defendant denies that he was served with notice, his defense is not a collateral but a direct attack upon the judgment. *Clark v. Little*, 41 Iowa, 497.

*Sprague & Wheeler*, for defendant in error, after giving a full history of the case from its commencement in Ohio, said:

"The defendant, Hasty, claims that the adjudication as to who was principal and security was fully determined in the case of revivor, in Lucas county, Ohio, and any irregularity or error in said judgment cannot be reviewed in this court; that the proper place for such review should be had in the courts of Ohio. Bou. L. Dic., 548. *Spencer v. Brockway*, 1 Ohio, 260. *Shumway v. Stillman*, 6 Wend., 447. *Hatcher v. Rochelue*, 18 N. Y., 86. Where both parties are legally in court, there can be no parol testimony introduced to contradict the record in the case, either directly or collaterally." 11 Mich., 389. 9 Bar., 619. 3 Wend., 35. 2 Mich., 165. 8 Wend., 9. 12 Bar., 168. 5 Mich., 155. 25 N. Y., 616. Wilcox Digest, 105. Missouri Digest, 294 and 296. 1 Greenleaf, Sec. 522, 523, note 531. 1 Bouvier, 531.

GANTT, J.

It appears by the pleadings in this case that the plaintiff and defendant were in the year 1847 partners in the mercantile business, and that on the twenty-eighth of June of that year, Lambert & Edmunds recovered against them as joint debtors, a judgment in the court of common pleas of Lucas county, state of Ohio. Partial payments were made on this judgment; and on the ninth of November, 1863, an ordinary motion was filed in that court to revive this judgment. The defendant in error, who was plaintiff in the court below, sets up in his petition what purports to be the finding and judgment of the court upon the motion for revivor of the original judgment—stating that the parties by their respective attorneys submitted the cause to the court, and

that the court found " that since the rendition of said judgment said Eaton has, as between himself and said Hasty, become, by his assumption to pay said judgment, the principal debtor, and said Hasty only his surety "; and that on the twelfth of December, 1864, it was " ordered and adjudged that said judgment stand revived against Eaton as principal debtor and said Hasty as surety." He further alleges that he paid the judgment as surety of plaintiff, and thereby a right of action upon the judgment has accrued to him against the plaintiff.

The plaintiff admits the original judgment recovered by Lambert & Edmunds against himself and the defendant; but alleges that it was for a debt solely due from defendant to said Lambert & Edmunds, and that he was only surety for defendant. He also pleads a release of the judgment to him from Lambert & Edmunds, dated May 20, 1860; that the defendant fraudulently obtained the judgment of revival in the form it was rendered; also want of jurisdiction of the court over him or the action in the proceedings of revivor; and that he had removed to the state of Nebraska in the month of May, 1863.

In the trial of the cause in the court below, the defendant in error offered no evidence whatever. It was admitted the plaintiff was in Plattsmouth, Nebraska, when the judgment of revival was had. In defense of the action the plaintiff made several offers, which are fully set out in the bill of exceptions, to introduce evidence tending to prove his several grounds of defense set up in his answer, but the court rejected all said evidence.

Now conceding there was a revival of the original judgment as alleged in the defendant's petition in the court below, what is the effect of such a revivor? At common law, after the expiration of one year from the rendition of a judgment without execution, the only

remedy upon the judgment was by action of debt; but the Stat. Westm. II, Ed. I, C. 45, authorized *scire facias* to issue, after the year had expired, to show cause why the matters enrolled should not be executed; and in such case the purpose of the writ was merely to continue a former suit to execution. This practice has been followed ever since; but in some states, at the present day, the statutes provide for the revival of judgments by motion and notice to the party; however, the purpose and effect of such a motion is the same as that of a *scire facias*.

In *Irwin v. Nixon*, 11 Pa. St., 425, it is said to be " a common, plain, and familiar principle, that a *scire facias* to revive a judgment * * * is but a continuation of the original action, and the execution thereon *is an execution on the former judgment*. The judgment on the *scire facias* is not * * * a new judgment, giving vitality only from that time, but *it is the revival of the original judgment*, giving or rather continuing the vitality of the original judgment, *with all its incidents*, from the time of its rendition." 1 Pet. C. C. R., 448. 2 T. & H., 379. It is therefore quite clear that the effect of the judgment of revival, if good for anything in the case at bar, is merely a revival of the original judgment *with all its incidents*, and that the attempt by the court, in its finding and order, to make it a new judgment, different in character, object, and purpose, from that of the original, cannot have any legal effect, unless it was authorized by some express provision of statutory law. But it is not shown that any such statute was in force, and therefore the case will be considered as if such attempt had not been made upon the simple motion to revive a judgment. According to this interpretation of the law the present action is upon a joint judgment rendered against the parties, plaintiff and defendant, in the year 1847, and revived in the year

1864. The defendant claims that he was the surety of plaintiff in that judgment; and the plaintiff claims that he was the surety of the defendant.

Now is the defendant entitled to become subrogated to the rights of the judgment creditors, Lambert & Edmunds, and to maintain this action against the plaintiff ?

Though the right of subrogation is one of the highest equity, still it is purely an equitable result, and the right of the surety to become subrogated to the rights of the creditor does not depend on contract, but rests alone upon principles of justice and equity; and therefore, when his claim to such a right is contested, it depends on facts to develop and determine the rights of the parties.

Subrogation will not be allowed if it would do substantial wrong, nor when the surety who has paid is indebted to the principal in more than the amount of the debt, nor can it be maintained when the party claiming has in fact been reimbursed and has sustained no loss. *Mosier's Appeal*, 56 Pa. St., 76. *Bleakley's Appeal*, 66 Pa. St., 187. *Baily v. Brownfield*, 20 Pa. St., 45. *Avery v. Petten*, 7 John. Ch., 211. *Mason v. Lord*, 20 Pick., 447, 449. *Bazzell, Adm'r, v. White*, 13 Ala., 422. *Himes v. Keller*, 3 W. & S., 401.

Now it must be borne in mind that the question of subrogation is a controversy between the two defendants in the original judgment, and that it is their rights which must be determined in this action according to the principles of justice and equity.

This is not a controversy which affects or tends to impeach the original judgment. Therefore, according to the doctrine of the law, it seems to me that, under the pleadings, the evidence offered by plaintiff in error, tending to show that the defendant was not, as surety, entitled to be subrogated to the rights of the judgment creditors, ought to have been admitted, and it was error to reject the same.

The next question is, whether a judgment of a state court, authenticated as prescribed by act of congress, can be avoided by any other plea than that of *nul tiel record*. It is said that the authenticity of such judgment and its effect depend upon this law, made, in pursuance of the constitution; that the faith and credit due to such judgment, as a judicial proceeding of a state, are given by the constitution. But though such judgment is made a debt of record—not re-examinable upon its merits—still in another state it has not the efficacy of a judgment upon property or persons, to be enforced by execution, until it is made a judgment there, and then it can only be enforced in such state as its laws may permit. It therefore seems that such judgment has the force and effect of a domestic judgment only within the jurisdiction of the court, or rather within the state in which it was pronounced, and in another state it is a domestic judgment only as to the merits of the claim or subject matter of the suit. Hence, in an action on such judgment in another state, exceptions may be taken to it which would be admissible in the jurisdiction where the judgment was pronounced; and in *Rape v. Heaton*, 9 Wis., 338, it is held that "in the absence of any proof to the contrary, the laws of another state are presumed to be the same as those of the state" in which the action is pending. *Sherrill v. Hopkins*, 1 Cow., 103. *Monroe v. Douglas*, 1 Seld., 447. And this exposition of the law is not in conflict with the case of *Mills v. Duryee*, 7 Cranch, 481, for in that case the point decided is that *nil debet* is not a good plea in an action on a foreign judgment. This was the only question raised in that case, and the only legitimate effect of the decision is, that such judgment cannot be controverted on the merits. And it seems quite clear from the language employed in *M'Elmoyle v. Cohen*, 13 Pet., 328, that the doctrine enunicated in *Mills v. Duryee* does not ad-

mit of the interpretation that a plea "which rests upon the ground of a release, payment, or a presumption of payment, from lapse of time, whether such presumption be raised by the common law prescription or by statute of limitation," cannot be pleaded in an action on a judgment of another state.

As far back as the case of *The Marshalsea*, 10 Coke, 68, the doctrine was settled that no adjudication can be valid unless the court has jurisdiction of the cause and the parties; and this principle applies with full force in an action on a foreign judgment. For in such case, although there may be a record, yet, under the circumstances, it is the record of a nullity without any legal force whatever. *Folger v. Columbian Ins. Co.*, 99 Mass., 269. *Price v. Hockok*, 39 Verm., 299. *Steel v. Smith*, 7 W. & S., 450. *Lawrence v. Jarvis*, 32 Ill., 304. *Bissell v. Briggs*, 9 Mass., 462. *Harris v. Hardeman*, 14 How., 339. *Shumway v. Stillman*, 4 Cow., 292.

The rule will not be questioned that the voluntary appearance of a party to a suit, by an attorney authorized, is as effective for the purpose of jurisdiction as an actual service of summons. But the appearance of an attorney, who had no authority to waive process or to defend the the suit, may be explained, and the defendant may contradict the record in this respect and show that in point of fact the court pronouncing the judgment did not have jurisdiction of the cause or his person. And though it may be contended that when an attorney appears to the prejudice of a party without authority he may subject himself to damages for the injury to the party, still, as said in *Shelton v. Tiffin*, 6 How., 186, "this would not sufficiently protect the rights of the party, and he is not bound by the proceedings; there is no other principle which can afford him adequate protection." In such case the judgment is a nullity. *Hill v. Mendenhall*, 21 Wallace, 454.

In *Rape v. Heaton*, 9 Wis., 335, after an elaborate review of the question, Paine, J., who delivered the opinion of the court, says: " I can see, therefore, no reason for any distinction as to the right of the party to inquire into the jurisdiction, between cases where the record is silent as to, and cases where it avers the facts necessary to show it."

Again, does not fraud constitute a good plea to an action on a foreign judgment on the ground that it vitiates everything? In *Farmer's Case*, 3 Coke, 77, it is held that all acts and deeds, judicial as well as extra-judicial, if mixed with fraud, are void. *Hostt v. Holcomb*, 3 Foster, 554.

In *Borden v. Fitch*, 15 John., 145, in respect of a foreign judgment it is said: " It is competent to allege fraud; otherwise the party would be permitted to derive a benefit from his own misconduct; a position altogether inadmissible." *Lawrence v. Jarvis*, 32 Ill., 310. *Shelton v. Tiffin*, 6 How., 186, 188.

It only remains to remark that the act of May 26th, 1790, provides that judicial records authenticated as prescribed " shall have such faith and credit given to them, in any court within the United States, as they have, by law or usage, in the courts of the state from whence the said records are or shall be taken," and that under this law the rule seems to be well settled, that the judgment of a state court so authenticated is conclusive upon the merits or subject matter of the suit; but that it does not exclude such defenses as inquire into the jurisdiction of the court in which it was pronounced, or the right of the state itself to exercise authority over the person or the subject matter of the suit, or to plead as a defense to an action on such judgment, a release, payment, or limitation by common law prescription or statute, or fraud in obtaining the judgment.

In the case at bar the proceedings cannot be consid-

ered as collateral, because it is an action brought directly upon a judgment revived, and in this action, founded on such judgment revived, the plaintiff offered evidence tending to prove his defense set up in his answer, but it was rejected by the court.

I think, according to the terms employed in the act prescribing the mode of authentication and effect of judicial proceedings, and the interpretation given to it by the courts, the rejection of the evidence offered was error.

The foregoing views of this case dispose of the charge given by the court to the jury.

The judgment of the court below must be reversed and the cause remanded for trial *de novo*.

REVERSED AND REMANDED.