## Gring's Appeal.

1. The right to subrogation is one of equity merely and due diligence must be exercised in asserting it. Laches in taking advantage of the right will forfeit it as against one who is injured by such laches.

2. A joint judgment debtor was forced under execution to pay the whole debt. It was afterwards shown that he was only a surety. He neglected to have the judgment marked to his use until more than a year after its payment. Meanwhile the property of the principal debtor was sold and the surety claimed that he was entitled to be subrogated to the rights of the creditors under the judgment as against subsequent judgment creditors. *Held*, that he had not exercised due diligence in having the judgment marked to his use, and his claim could not be allowed.

March 6th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, WOODWARD, TRUNKEY and STERRETT, JJ. PAXSON, J., absent.

Appeal from the Court of Common Pleas of *Berks county :* Of January Term 1879, No. 224½.

Appeal of David H. Gring from the decree of the court sustaining exceptions to the report of an auditor appointed to distribute the proceeds of a sale of the assigned estate of David Gring.

On April 26th 1873, a judgment was entered against David Gring and David H. Gring, on their joint and several note in favor of Henry Mull, for $1450. On September 6th 1875, a judgment was entered against John H. Gring, David Gring and David H. Gring in favor of Levi Gensemer, who assigned it to David Gensemer. On October 2d 1876, David Gring executed an assignment of all his property to Henry Mull, for the benefit of creditors. On February 23d 1877, an execution issued on the Gensemer judgment, and the real estate of David H. Gring was sold for $4050.84. The fund was paid into court by the sheriff, and an auditor appointed to make distribution. The money was sufficient to pay the Mull judgment and a part of the Gensemer, and was so awarded. Mull, subsequently, June 16th 1877, receipted to the sheriff for the amount decreed to him out of the proceeds of the sale, but left the record of the judgment stand untouched.

On September 8th 1877, Mull, the assignee, sold the real estate of David Gring for $14,764.13, and on 25th May 1878, an auditor was appointed to audit the account filed by the assignee, and distribute the balance in his hands. The real estate fund for distribution amounted to $14,057.44. The liens of record against the assignee were as follows :—

1. Judgment of Jacob Moore, 199 March T. 1871,     $4000
2. Judgment of Charles Evans, dated March 28th 1872,   7000
3. Judgment of Jacob Moore, 314 March T. 1873,     1800
4. Judgment of Henry Mull, 124 April T. 1873,     1450
5. Judgment of J. George Seltzer, 225 April T. 1874,   2000

The first three judgments were paid in full out of the fund, and

[Gring's Appeal.]

there remained a balance of $813.05. On April 27th 1878, Mull assigned his judgment for $1450 to David H. Gring, and before the auditor the above balance was claimed by the latter as the assignee of said judgment, and by George Seltzer on his judgment of $2000. The auditor found as a fact that David H. Gring had been a surety on the judgment note, on which judgment had been originally entered against David Gring and David H. Gring, and distributed the balance to the latter on the ground that as the Mull judgment was still open and unsatisfied on the record, and it had been paid out of the proceeds of David H. Gring's property, he was entitled to be subrogated to the judgment.

The court, Sassaman, J., sustained the exceptions filed to this report, and awarded the fund to the Seltzer judgment, in an opinion, inter alia, saying:

"It is a principle well established, that subrogation will not be allowed to the prejudice of other creditors, though the party were originally but a surety for his co-defendant: Goswiler's Estate, 3 P. & W. 200. And that the proceeds of sale are distributable among the lien-creditors, as they appear at the time of sale. If the sheriff has returned money made to a former execution, the judgment thereby paid cannot be rehabilitated by an order of subrogation made after sale: Douglass's Appeal, 12 Wright 223. In this case there was an actual decree of subrogation, but Judge STRONG said that the decree was only the form, while the right to subrogation was the substance. It is in this light that we treat the case before us, and the sale made by the order of the court was only in place of a sheriff's sale; we take it that it makes no difference in the Mull judgment, if the money was made on its own execution or the execution of another, inasmuch as the money made by the process was used to pay it and so receipted for. The effect would be the same. It cannot be permitted that a secret equity may be held unasserted until holders of legal rights have been thrown off their guard, and lost their opportunity to protect themselves by attending a sale against it, and then be brought forward to the injury of those who had no notice of their existence."

From the decree sustaining the exceptions this appeal was taken.

*A. G. Green* and *Wm. M. Goodman*, for appellant.—The surety, on paying the debt, is entitled to stand in the place of the creditor, and to be subrogated to all his rights against the principal debtor: Erb's Appeal, 2 P. & W. 296; Yard v. Patton, 1 Harris 287. Actual assignment is not necessary to subrogation in the case of a surety; Lloyd v. Barr, 1 Jones 48; Gossin v. Brown, Id. 531; Bailey v. Brownfield, 8 Harris 45; Cottrell's Appeal, 11 Id. 294. When one is compelled to pay where another is primarily liable, subrogation takes place by operation of law: Kyner v. Kyner, 6 Watts 221; McCormick's Administrator v. Irwin, 11

Casey 117; and even an entry of satisfaction on the judgment against the principal, if without the consent of the surety, will not affect the right of subrogation : Bailey *v.* Brownfield, *supra.*

*H. Willis Bland,* for appellee.—The appellant is estopped from setting up as against the appellee, a subsequent judgment-creditor for value without notice, his secret equity, the appellee having parted with his money upon the actual state of the record which imported a joint and several and equal liability between David Gring and the appellant in the Mull judgment: Waters's Appeal, 11 Casey 523; Lewis *v.* Carstairs, 5 W. & S. 209; Ackla *v.* Ackla, 6 Barr 233 ; Graff *v.* Railroad Co., 7 Casey 496 ; Martin *v.* Ives, 17 S. & R. 364 ; Pickard *v.* Sears, 33 E. C. L. R. 115.

It is a settled principle that the holder of an equity, must be vigilant in asserting it, if he would have the aid of a chancellor. Laches in such a holder always postpones him to one who may have been injured oy his inertness : Douglass's Appeal, 12 Wright 225.

Here, the appellant, after having paid the judgment against his alleged principal, in May 1877, remained quiet until the second meeting before the auditor, in July 1878, over a year, without any assertion of his secret equity. He permitted the record to show continuously, during all that period, that the judgment of Mull against his principal was paid. While thus inactive, the assignee's sale of his alleged principal's real estate, took place in September 1877. Thus the appellee was thrown off his guard by the state of the record. There can be no subrogation between joint debtors : Singizer's Appeal, 4 Casey 526 ; Bank of Washington *v.* Barrington et al., 2 P. & W. 37–39 ; Greiner's Estate, 2 Watts 414 ; Bispham's Equity, 1st ed. 314, 315. Subrogation will not be allowed to the prejudice of other creditors, though the party claiming was original surety: Goswiler's Estate, 3 P. & W. 200 ; Himes *v.* Keller, 3 W. & S. 404.

Mr. Justice GORDON delivered the opinion of the court, March 24th 1879.

We regard the conclusion at which the court below arrived as entirely correct. To all appearance, the two Grings were joint debtors in the Mull judgment, and that judgment appeared, from the records, to have been fully satisfied by the money made upon the Gensemer writ.

If indeed the appellant was surety, then he was entitled to have the judgment marked to his use; but for all other purposes, it was in fact satisfied. As between himself and subsequent creditors, this was a matter of grace, and could not be so exercised as to produce results inequitable to third parties. As was said in Himes *v.* Keller, 3 W. & S. 401, a substitution which will work a prejudice to other

[Gring's Appeal.]

creditors, not parties to the arrangement, will be made only in a clear case. So in Armstrong's Appeal, 5 W. & S. 352, it was held that substitution is a matter of benevolence and equity, and that regard is always had, in such questions, to third persons, whose rights may be affected thereby. Subrogation was, therefore, refused to one who was bail for stay of execution, as against subsequent judgments, and this, as it would seem, because such bail effected a delay in the collection, not indeed of the later judgments, but of the precedent one, which perchance might, in the meantime, have been paid or collected in relief of those that were junior.

The principle in all these cases of subrogation is one of equity merely, and must be exercised with due regard for the rights of others: Wallace's Estate, 9 P. F. Smith 401; McGinnis's Appeal, 4 Harris 445. This, too, involves the rule, that this right must be exercised with due diligence. Laches in this particular will operate to forfeit such equity, as against one injured by the inertness of the holder thereof. So it was held, that where a judgment, as in the case in hand, had been satisfied, the surety could not interpose, after a sale of the debtor's property upon a subsequent writ, and claim subrogation to the exclusion of a later judgment. Now, the money, which went to the payment of Mull's judgment, was made by the sale on the Gensemer vend. ex., April 14th 1877, and the decree for the appropriation of this money was entered on the 26th of May following. From this date David H. Gring was entitled to have this judgment marked to his use. This, however, he neglected to have done until the following April, long after the sale of David Gring's property, and only about a month before the sitting of the auditor who was appointed to distribute the proceeds of that sale. In the meantime, as we have before remarked, there was nothing to show that the Grings were not joint debtors in the Mull judgment— nothing to warn other creditors that it had not been fully and finally paid off and satisfied by the proceeds of the Gensemer writ. It was in this manner that the surety allowed his equity to sleep in secrecy until he discovered that the fund produced by the assignee's sale might be made to reach the Mull judgment, if that of Seltzer could by any means be crowded out. This was too late. A subsequent creditor could not thus be disappointed by a secret equity, which was sprung upon him, without previous notice, just when he had a right to expect that his claim would be satisfied.

We must regard this case as within the spirit, if not within the very letter, of Douglass's Appeal, above-mentioned.

Decree affirmed, wth costs to be paid by the appellant.