## Searight's Estate.    Coyle's Appeal.

*Executors and administrators—Subrogation—Judgments.*

An executor of an insolvent estate who in good faith and in the belief that the estate is solvent pays a judgment against decedent, and marks such payment of record, is entitled to subrogation out of the personal estate, but not out of the real estate against junior liens of record at the date of the sale.

Argued April 27, 1894.    Appeal, No. 434, Jan. T., 1894, by James Coyle and Keziah Searight, judgment creditors, from decree of O. C. Cumberland Co., distributing estate of F. W. Searight, deceased.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.    Reversed.

Adjudication of executor's account.

From the report of Edw. B. Watts, Esq., auditor, it appeared that the following exception was filed to the account of Joseph A. Stuart, one of the executors of F. W. Searight, deceased:

" Accountant should not be allowed credit for the payment of items on the credit side of the account (enumerating them), for the reason that said payments, the same being for interest, were made by him out of the estate funds without consultation with his coexecutors, and receipts in full to him as one of the executors were taken for said interest and the same also receipted for by the creditors at the several times of payment upon the court records, without any intention that accountant should be subrogated to any right thereto."

The auditor reported upon this exception as follows:

" The facts as to the payments of interest, which was interest on judgments, as stated in the above exception, are substantially correct. Nothing was done or said in regard to subrogating the accountant to any right to those payments at the times they were made. The payments, however, were made by the accountant in his capacity as executor, and with his checks as such, and the receipts were so taken by him; and he expected to be entitled to credit for the payments on the settlement of the estate. He made the said payments in good faith and because he believed the estate to be solvent. The money with which they were made was derived from sales of personalty belonging to the estate, having been made prior to the sales of real estate.

" [The accountant having in good faith, and believing the estate to be solvent, made payments of interest upon certain judgments as enumerated in the exception filed, credit should be allowed him for the same in this distribution as far as the pro rata awarded from the personalty and the proceeds of the sales of the real estate cover the said liens upon which the payments were made.] "

Exceptions, among others, to the auditor's finding as in brackets were dismissed in the following opinion by STEWART, P. J., specially presiding:

" In view of the other facts in this case, it is a matter of little significance that the executor when he paid the principal and interest on certain judgments, instead of having the claims

assigned to himself, had them marked paid and satisfied.  At law, this would imply an extinguishment of the debt, but such conclusion is avoided in equity, whenever the ultimate payment of the debt should, in good conscience, be required of some one else.  In entire good faith, and in the honest belief that the estate was more than adequate to the payment of all its liabilities, the executor, in advance of the sale of the real estate of the testator, applied certain assets to the payment of certain liens.  Now that the estate has all been converted, and its insolvency appears, it is contended that he is concluded by the entry of satisfaction upon the judgments, and that he cannot make use of them in the distribution of the estate for his reimbursement.

"Had these claims been assigned to him, his right to use them could not have been questioned.  This would have been the better and safer course, since it would have given him under any circumstances all the right of the plaintiffs in the judgments.  Notwithstanding they were marked paid, he may still use them, but only on condition that the exercise of this right works no injury to the other parties.  He might have had an absolute right by an assignment, whereas he now has only a conditional one.  He has lost this much advantage and no more, and the governing question is, would allowing these claims to be kept afoot for the executor's reimbursement, result in giving the creditors of the estate less than they would have received had they not been paid?  Of course, it would result greatly to their advantage were these claims to be eliminated from the distribution; but they are not entitled to be advantaged at the expense of an innocent party; they are entitled simply to the rights they had, unimpaired and unaffected by anything the executor may have done.  If what the executor asks is consistent with these, he is entitled to it, no matter if the record does show satisfaction.  Now it is not pretended that any creditor gets less, in consequence of the executor's act, than he otherwise would have done.  Where then is the injury?  The status of each creditor was fixed at the death of the testator, and it remains undisputed.  To give to the receipts which the executor took in these cases the effect of an assignment to himself, is to do simple justice to him without prejudicing the rights of any one concerned.

" It was urged, upon the argument of the case, that certain lien creditors bid upon the testator's real estate an amount just sufficient to cover their liens, assuming, as they had a right to do, that the judgments which the executor had paid, in whole or in part, were in point of fact satisfied and extinguished, to the extent of the payments made, and that to allow the executor to recover on these judgments now would disappoint them. Be it so, such fact would not of itself operate to defeat the executor's claim. More than simple disappointment is required to work that result—injury is the essential ingredient. Were there a finding by the auditor that any subsequent lien creditor, bidding at that sale for his own protection, had been misled into bidding less than he otherwise would have done, because of these entries of payment and satisfaction upon the record, and that in consequence his judgment would not be reached in the distribution if the executor should be allowed his claim, doubtless such finding would establish a superior equity in the creditor, arising from the injury that resulted to him, and which was caused by the act of the executor. Not only is there no such finding by the auditor, there was no request for any finding on the subject, and there is no exception to the report because of its omission. The exception taken is, that the auditor allowed the executor's claim, and the only ground assigned is that the receipts showed payment and extinguishment of the debt. Such a thing as injury, special or general, is not suggested. If a finding on this subject was desired, it should have been submitted to the auditor. If the findings do not cover all the ground that is thought important, exceptions should be taken to their insufficiency. True the court may supplement the findings of an auditor, but it rarely occurs that the court does so of its own motion when counsel are content with the report as it stands. We have not been asked for any additional findings, nevertheless we have examined the evidence to see what, if any, warrant there is for this contention on the part of the judgment creditors. We fail to see anything which would justify a finding that would avail them in the least. The only witness who testifies with respect to this matter is Mr. Wetzel, who says that he made a close calculation of the liens ; that he omitted therefrom such as were paid by the executor because they were marked satisfied ; that he

attended the sale as a purchaser, and bid $75.00 per acre on the mansion tract, based on the calculation he had made. This comes far short of establishing a superior equity to that of the executor. He says he attended the sale as a purchaser. To purchase for whom? For himself, or as attorney for the plaintiff in the judgment? If for himself, he not being shown to be a creditor, of course he has no standing; if as attorney for a judgment creditor, to what extent was he authorized to bid? Did his bid reach the judgment he represented? Would he have continued bidding until that result had been reached had he known that the judgments were to be paid out of the bid? In short, where and how is he injured? It will not do to assume that on a different basis of fact he would have acted otherwise than he did. That is not to be left to inference, but is to be proved as any other essential fact, and yet there is not enough in the evidence to support an inference of the feeblest sort that Mr. Wetzel would have bid an additional dollar had he known these claims of the executor were to be paid. If he was prepared to bid an amount sufficient to protect all or part of the judgment he represented, notwithstanding these earlier liens marked satisfied were to be paid out of the bid, why did he not say so? Unless he would have so done, his client is in no way prejudiced by allowing the executor to assert these claims. Disappointed he may be, but injured he certainly is not. I see no reason why equity should not be allowed to do its perfect work in keeping afoot these judgments for the protection of the executor.

" The exceptions which relate to so much of the report are overruled."

*Errors assigned* were dismissal of exceptions, quoting them.

*E. W. Biddle* and *M. C. Herman*, *W. A. Kramer* with them, for appellant, cited: Gring's Ap., 89 Pa. 336; Douglass's Ap., 48 Pa. 223; Indiana County Bank's Ap., 95 Pa. 500; Harner's Ap., 94 Pa. 489.

*John Hays*, for appellee, filed no paper-book.

OPINION BY MR. JUSTICE MITCHELL, July 12, 1894:
That the executor, in good faith and with reasonable grounds

to believe that the estate was solvent, paid the interest and the judgments, gives him, as the auditor found and the court below held, an equitable right of subrogation,.to which he may be entitled even at the present time provided it can be allowed without injury to others. So far therefore as the fund was the proceeds of personal property, the distribution may be sustained upon the opinion of the learned judge below.

But with regard to the proceeds of the real estate the case is entirely different. There were lien creditors with rights of priority between themselves, and as to other creditors. They stood in line, and when one of them stepped out, by expiration of his lien or payment or any other cause, all those in the rear advanced a step towards the front. Their rank and standing were fixed absolutely as a matter of law, by the sale. After that no new rights of lien, or claim on the proceeds, could be acquired by subrogation or otherwise. This was firmly settled in Douglass's Appeal, 48 Pa. 223, and Gring's Appeal, 89 Pa. 339, where even sureties, who had an unquestioned right of subrogation, were held to have lost it as against junior incumbrancers by failing to assert it until after a judicial sale.

The learned judge below apparently treated this rule as dependent on the particular facts of each case, showing actual injury to the junior lien holders, and as there was no evidence in the present case that the appellants would have bid any more at the sale if they had known that Mr. Stuart was entitled to subrogation to the interest and judgments he had paid, he held that they were not injured, but only disappointed by the subrogation. The rule however is a presumption of law, not rebuttable, and the fact is to be decided by the state of the record at the date of the sale. In Harner's Appeal, 94 Pa. 489, it was held that a judgment creditor had a right to rely on the apparent priority of his judgment shown by the satisfaction of record of an earlier one; and in Indiana County Bank's Appeal, 95 Pa. 500, it was said by the present Chief Justice: "The rights of those claiming to participate in the proceeds of a sheriff's sale are to be determined by their status as shown by the record at the time of the sale." In none of the cases is any reference made to the evidence, or the fact of injury to the junior incumbrancers, the inference of injury is drawn as a presumption juris et de jure, and the rule is a rule of policy in the interest of certainty in judicial sales.

It is unfortunate for the executor that his very carefulness to have the payments noted on the record, should work to his disadvantage now, but the payments of interest must stand on the same basis as the payments of principal.   Both being on the record as reductions or satisfaction of the judgments, at the time of the sale, must be conclusively presumed to be so as against junior judgment creditors claiming the fund.

Decree reversed, and distribution directed to be made in accordance with this opinion.