## PETER AND WILLIAM RAPE, Plaintiffs, *vs.* ISAAC HEATON.

ERROR TO CIRCUIT COURT, DANE COUNTY.

Heard August 1.]                    [Decided October 18, 1859.

*Evidence—Records—Jurisdiction—Judgment—State Laws*
*—Service—State Sovereignty.*

In an action on a judgment of a court of common pleas in another State, and pleas, *nul tiel record*, and that the defendants had not been served with process; the return of the sheriff in the record, showed that the writ was served on *defendant* P. & W., by leaving a certified copy with *his* family in *their* residence, &c. Held that this return did not show enough to give the court of common pleas jurisdiction of the defendants, so as to enter judgment by default against them; and the record should be rejected as evidence under the pleadings.

A party to an action on a record of a judgment may show that the court had not jurisdiction of the person, or the subject matter, even where the record avers jurisdiction; but this is especially true where the want of jurisdiction

appears upon the face of the record, or where the record makes no averment of jurisdiction.

Whenever it becomes necessary for the courts of one state to determine a question according to the general laws of another state, in the absence of any proof to the contrary, those laws are presumed to be the same as its own; but this rule may be rebutted by positive evidence of what is the law of the other state.

State laws must be proved in the courts of this state, in the same manner as other foreign laws are proved; but the courts are not bound to take actual notice of them, in the absence of all proof, but will presume them the same as their own on the same subject; and it is incumbent on a party relying on the foreign state law to show the difference, if any exists.

Whether a record of a judgment, consisting of the docket entries only, without showing the amount of the judgment, or whether it is against one or both parties, is a sufficient judgment record to sustain an action, is doubted, but not decided.

The courts of our state are not bound to take judicial notice of the laws of another state; but in the absence of all proof may presume them to be in accordance with their own.

The act of Congress does not profess to determine in what manner the state courts shall ascertain the faith and credit to be given to the judgments of other states; and cannot be construed as making it imperative on them to take judicial cognizance of the laws of such other state.

The relations of the states to each other, as to matters not surrendered to the general government, are those of foreign states in close friendship, and whatever relaxations this close friendship ought, or may have induced in the strict rules of proof, yet upon the principles of evidence, the laws and public documents of one state can be proved in the courts of another only as other foreign laws are proved: the relaxation only extends to the method of proof, and not to an entire neglect of all evidence, and a requirement upon the courts to take judicial cognizance of the laws of such other states.

Where a summons directed to two defendants is returned by the sheriff, as served by leaving a certified copy with the family of one of the defendants, without showing which, such service is void for uncertainty, as to both defendants.

Where a return on a summons upon a defendant showed that it was made by leaving a copy "with his family," held that such return was insufficient; the return should show that it was left with some person of suitable age and discretion, otherwise it will not give the court jurisdiction of the defendant.

There can be no doubt that where the manner of service is set forth in the record presented on the trial of an action founded thereon, the court may

look into it to see whether it conferred jurisdiction upon the person of the defendant.

The fact that a defendant resided within the jurisdiction of the political sovereignty, is not material to the jurisdiction of the court of that sovereignty, except as it may bear upon the laws relating to services upon him, inasmuch as the citizen of one state may be sued in another, if he goes there and is served with process, he would be bound by the judgment rendered in the foreign state court.

If a judgment is rendered in a state court against one of its own citizens, and the record showed that the court had no jurisdiction over him, he would not be bound by it, though he did reside in the state.

This was an action of debt on a judgment record from the court of common pleas, Mercer county, State of Pennsylvania, by the defendant in error against the plaintiffs in error, in the circuit court for the county of Dane. The declaration was in the usual form, and contained only one count.

The defendants below pleaded *nul tiel record*, and also for a second and amended plea specially, that the defendants had not been served with process, nor had they or either of them been summoned to appear before the court of common pleas, of Mercer county, to answer to the suit preferred against them by the plaintiff; in which suit the supposed recovery was obtained, as by the laws of Pennsylvania they were entitled to be served; and that neither they nor either of them had any notice of the pendency of said suit against them in the court in which the supposed recovery was had against them; and that neither they nor either of them appeared in said suit, either in their own proper person or by an attorney by them, or either of them, lawfully authorized to enter their appearance, or the appearance of either of them.

Issue was taken on this plea, and the case tried by a jury. The only questions raised will be understood by the following extracts from the record read in evidence:

"Among the records and proceedings of the court of common pleas, of Mercer county, Pennsylvania, the following appears as matter of record, at No. 3 of June term, 1845, of said court, to wit:

*[Copy of Docket Entry.]*

| Isaac Heaton, 3 vs. Peter Rape and William Rape. | Summons, case in assumpsit, Issued April 15th, 1845, Served, so answers, John Forker, sheriff. |

Rape vs. Heaton.

| | | |
|---|---|---|
| Sheriff's fee, . . . | 1 84 | And now, to wit., Dec. 15th, |
| Tax paid by pltff., . | 0 50 | 1845, on motion of William |
| Pr. Douglas, . . . | 1 62 | M. Stephenson, Esq., the court |
| Sheriff Moore, . . | 3 75 | grant judgment. |
| Pr. Treat, . . . . | 2 06 | |
| Damages, . . . | 143 96 | May 8th, 1846, Writ of In- |
| Int. 18th June, | | quiry issued. |
| 1846. Costs, &c. | | |

Inquisition indented and taken at Mercer, on the 18th of June, 1846, before John Moore, high sheriff of the county aforesaid, by the oaths of John Forker, &c., respectively do say, that Isaac Heaton hath sustained damages to the amount of one hundred and forth-three dollars and ninety-six cents ; and for his costs and charges, by him in and about his suit in that behalf expended, six cents. Witness, &c.

24th June, 1846. The court grant judgment on the finding of the inquest.                    M. C. TREAT, Proth'y.

The summons was in the usual form, upon which was the following return :

" I have served this writ on defendant Peter Rape and William Rape, by leaving a certified copy with his family, in their residence, on the 15th day of April.

So an's                    JOHN FORKER, Sheriff.

Sheriff's fee, $1,84.

After the plaintiff below closed his testimony by reading the records, the defendants below moved the court to nonsuit the plaintiff, which was overruled. They then offered to read from Purdon's Digest of the Laws of Pennsylvania, certain sections, with the view and for the purpose of showing that the court of common pleas of Mercer county, Pennsylvania, had no jurisdiction of the defendants at the time of the rendition of the judgment by the court, by means of there having been no due and lawful service on the defendants of the summons, according to the laws of Pennsylvania. This offer was refused, and exception taken. There was a verdict for the plaintiff of $251,11, upon which judgment was rendered, and from which this writ of error is brought.

*H. E. Frink*, for the plaintiffs in error.

*Abbott & Clark*, for the defendant in error.

Rape vs. Heaton.

*By the Court,* PAINE, J.   This was an action on a judg-
ment of the court of common pleas, of Mercer county, in the
State of Pennsylvania.   The defendants pleaded *nul tiel rec-
ord*, and a special plea, averring that neither of them was
ever served with process, nor ever appeared in the suit.   To
this plea there was a demurrer, which was overruled, and the
plaintiff then replied, that the court of common pleas in Penn-
sylvania had jurisdiction of the cause and of the parties, &c.

The record was offered in evidence, objected to by the de-
fendants, admitted, and exception taken.   After the plaintiff
rested, the defendants' counsel offered in evidence " Purdon's
Digest of the Laws of Pennsylvania," for the purpose of
showing that there was no service on the defendants.   It was
objected to, and the court rejected the evidence, on the ground
that it was not published by authority; holding that it was
not proper either for the court or jury.   The plaintiff had
judgment, and the case is brought here by writ of error.

Assuming the record offered to be a sufficient record of a
judgment upon which to sustain an action, the case presents
several questions of much interest, which were discussed on
the argument.   Ever since the case of *Bissell vs. Briggs*, 9
Mass., 462, it has been held that the judgments of other states,
to which full faith and credit are required to be given, by the
constitution of the United States, are only those in which the
courts rendering them had jurisdiction of the suits and par-
ties; and such jurisdiction has been allowed to be questioned
by the party against whom such judgments are set up.

But there is great conflict and uncertainty among the cases
as to the extent of this right.   Some courts hold the doctrine
laid down by the supreme court of New York, in *Starbuck
vs. Murray*, 5 Wend., 148, that the defendant may contradict
the express allegations of the alleged record, as to jurisdic-
tional facts, on the ground that if there was no jurisdic-
tion, then, as to him, it is no record.   Other cases entirely

dissent from this rule, and some have criticised it with some severity. Thus, in *Lincoln vs. Tower*, 2 McLean, 473, Justice McLean denies its correctness, and contends that if the averments in the record as to jurisdictional facts may be denied, there is no reason why any other facts alleged may not as well be denied. And in *Wilson vs. Jackson*, 10 Missouri, Rep., 334, the court, in commenting on the same case, asks: "Is there anything monstrous in the proposition that a record should be conclusive on the question of jurisdiction, any more than it should be conclusive of other facts equally fatal to the interests of the party to be affected by the judgment?" Now it seems to me that this question may readily be answered in the affirmative. And that it is obviously much more monstrous to say that a party shall be concluded by an averment in a record that he was served with process, from showing that he never was so served, and that the court never had any jurisdiction over him; than to say, such jurisdiction being undisputed, that he shall be bound by the other averments of the record. Because the reason upon which the conclusiveness of records rests, is that the parties have been served, have had an opportunity to defend their interests, and see to it that the record is truly made up. And when this is so, there is nothing "monstrous" at all in holding them bound by it. But where this is not so, where the party has, in fact, never been served, never had an opportunity to defend, to hold him absolutely concluded by a false averment in a record to the contrary, would seem to be the very essence of injustice.

These very cases admit that if the want of jurisdiction appears on the record itself, then the party is not bound by it, but may disregard all its averments. So the Missouri court, and others, as in *Hall et al. vs. Williams et al.*, 6 Pick., 232, admit that where the record is silent as to the

jurisdictional facts, the party may aver and prove that there was no jurisdiction, and thus destroy the effect of the record. This can only be upon the ground that if there was no jurisdiction, then the pretended record is no record, and the doctrine of conclusiveness does not apply to it. But this want of jurisdiction, if it can be established, would have the same effect upon the record which averred the facts necessary to show jurisdiction, as upon one silent as to them. To say, therefore, that when a record avers such facts, a party shall not be permitted to deny them, because that is contradicting a record, does seem, as Judge Marcy says, to be assuming the whole question, for the question, whether it is a record or not, is the very thing put in issue. A party would probably not be precluded from showing that a paper offered against him as a record, was a forgery. But suppose it contained an allegation that it was not a forgery, would he then be precluded? Manifestly not, because, on the theory that it was a forgery, the allegation, in itself, that it was not, would fall with the rest of it. So of these averments as to jurisdictional facts. If there was no jurisdiction, they fall with the rest of the record. And to give such averments effect as records, in determining the very question whether they are entitled to such effect, would seem to be a method of determining a question about as unsatisfactory as could well be devised.

Where the record is silent as to the jurisdictional facts, and the party avers that he was never served, and never appeared, &c., and the court allows him to prove that, for the purpose of showing a want of jurisdiction, it necessarily suspends its judgment on the question whether the alleged record is really a record, until the question of jurisdiction is determined. And I can see no reason why the same course should not be pursued, where the alleged record avers the jurisdictional facts, and why the court should not suspend its judgment on

those allegations as well as the others. And there is no other possible way of avoiding that extreme of injustice, the holding of a party bound by a record of a proceeding of which he never had notice, or opportunity to defend himself. And it is no answer to say, that to allow such proof, is to contradict a record, for this is assuming the whole issue, inasmuch as if there was no jurisdiction; then, according to all the authorities, these allegations are not a record. And to give them that effect, in determining the very question whether they are entitled to that effect or not, is a rule of decision the logic or justice of which I am totally unable to perceive. It is allowing that which is not, in truth, a record, to make itself one by a false allegation that it is one.

It is jurisdiction only that gives to a record its character of conclusiveness. It is, therefore, logically impossible, whatever it may be legally, to make a record without jurisdiction that shall be conclusive as to jurisdictional averments or any other. When it is conceded, therefore, that if the record is silent on the subject, a want of jurisdiction may be shown to defeat it, I cannot comprehend how, even though it contain the necessary averments, the court can refuse to inquire on the ground that it is estopped by a record, for by its own concession, if the inquiry was made, it might appear that the pretended record was an entire nullity. I can see, therefore, no reason for any distinction as to the right of the party to inquire into the jurisdiction, between cases where the record is silent as to, and those where it avers, the facts necessary to show it. And the learned writer of the notes to the "American Leading Cases," 2d vol., 788, intimates that there is "no middle ground between throwing the whole question of jurisdiction open to examination," and holding the records conclusive in all cases, as well to jurisdiction as to every thing else.

Which of these rules is the true one is a question of vital

Rape vs. Heaton.

interest.  I confess that to my own mind the rule laid down in *Starbuck vs. Murray,* seems so, if the question is to be decided upon principle.  How it would be held upon the weight of authority, is much more doubtful.

When the case of *Mills vs. Duryee,* 7 Cranch, 481, was first decided, it was very generally supposed to have settled the question against the right to inquire into the jurisdiction in any case.  Thus it was so considered in *Commonwealth vs. Green,* 17 Mass., 545.  But afterwards in *Hall vs. Williams,* 6 Pick., 233, before cited, that court said that in its former decision it had "yielded a painful deference" to the case of *Mills vs. Duryee,* without close examination, and on reviewing the matter, held that the jurisdiction might be inquired into, where the record was silent on the subject. Though the court said, if it appeared by the record that the defendant had notice or appeared in defense, they were "inclined to think it could not be gainsayed."  But in *Ewer vs. Coffin,* 1 Cush., 23, this remark is called a "*dictum*" of Chief Justice Parker; and this case as well as that of *Gleason vs. Dodd,* 4 Met., 333, indicates a decided leaning in favor of the right of inquiring into the jurisdiction.  This right seems essential for the purpose of preventing the courts of one state from assuming a jurisdiction over the citizens of another, who have never been within its actual jurisdiction, or where they could be legally served with its process.  But if it be once established that an averment in a record showing legal service, can never be controverted, such an unwarrantable jurisdiction can easily be assumed and exercised.  For any state which desires to bind the citizens of other states by litigation in its own courts, may readily provide that notice may be sent to them in the states where they reside; but that its records shall, by a fiction, be so made up as to show personal service within its limits.  Then when the record was sent to the state where the party resided, to be enforced, he would be

Rape vs. Heaton.

bound by it, and could not aver to the contrary. The tendency of decisions in the state courts has therefore been to restrict the operation of the decision in *Mills vs. Duryee* to the narrowest possible limits, and to assert as far as possible the right to inquire into the jurisdiction. There are however very many authorities which hold that where the record expressly avers the facts necessary to show jurisdiction, it cannot be controverted. They are most of them referred to in 2 Am. Leading Cases, and the subject is very fairly presented in the case of *Wilcox et al. vs. Kassick*, 2 Mich. R., 165.

But the view we have taken of the record offered in this case, renders it unnecessary for us to determine this vexed question, for we think it appears on its face that one of the defendants at least was never served with process. And that consequently there was no jurisdiction as to him. This record is undoubtedly entitled to the credit and effect it would have by the Laws of Pennsylvania. But here the question meets us, how are those laws to be known? Must this court take judicial notice of them, or must they be averred and proved? If the latter, on whom does the burden rest? And if there be no proof by either party on the subject, is there any presumption on which the court should act?

It would seem that these questions, so frequently occurring under our political system, should have been settled before this. But there is considerable conflict and uncertainty to be found in the authorities on the subject. These questions are asked in the case of *Wilson vs. Jackson*, before cited. But the court does not determine them, but after alluding to some cases which hold that courts in such cases are bound to take notice of the laws of other states, disposes of the case without saying whether it is bound to take notice of the laws of Virginia or not. The editor of the notes to American Leading Cases, 2 Vol., p. 784, says: "It would seem" that courts are bound to take such notice. The only state case there cited,

which sustains this rule is, *Clark's Adm'r vs. Day*, 2 Leigh., 172.

In *Wilson vs. Jackson*, before cited, the court quotes the following remark of Judge Cowen, 3 Phillips' Ev., p. 902, "All the decisions which have been made overruling the plea of *nil debet*, when pleaded to a declaration on a judgment of a neighboring state, seems to us as virtually maintaining the domestic character of such judgments to the extent of requiring the court which is to pass upon its effects to take judicial notice of the local law upon which that effect depends. For how else can it be determined upon demurrer that *nil debet* is improper?"

It is not here claimed that those decisions have expressly held that the courts were bound to take such notice, but the conclusion is derived from the fact that they could not otherwise determine the plea on demurrer. But it would seem that reference to a well settled rule would enable them to determine such a plea without actually taking such notice. That is, that whenever it becomes necessary for the courts of a country to determine any question according to the laws of another, in the absence of any proof to the contrary, those laws are presumed to be the same as its own. *Sherrill vs. Hopkins*, 1 Cow., 103; *Legg vs. Legg*, 8 Mass., 99; *Holmes vs. Boughton*, 10 Wend., 75; *Monroe vs. Douglas*, 1 Seld., 447. Acting upon this presumption each court would, in determining such a demurrer, give the record such effect as it would be entitled to by its own laws. And it is probably because the laws of the several states, as to the mode of obtaining jurisdiction over parties, and the effect of records are so substantially alike that questions concerning their difference have not oftener been raised, and courts compelled to determine more definitely in such cases the exact principles upon which they have proceeded.

The act of Congress, requiring such faith and credit to be

given to judgments, as they would have in the states where rendered, does not profess to determine in what manner the courts shall ascertain such effect, and cannot be construed as making it imperative on them to take judicial cognizance of the laws of other states.    There are many cases where courts are bound to decide upon contracts according to the laws of other states, where they were made, or are to be performed. But it has never been held that in such cases they were bound to take judicial notice of those laws.   So here the constitution and act of Congress require the effect and credit of judgments to be determined according to the law of the state where rendered, but leave the manner in which courts shall ascertain those laws, to be determined by the general principles of pleading and proof applicable to the subject.   The act of Congress does not undertake to determine this, and even if it did, it is very doubtful whether it would be competent for Congress to provide in what manner the laws of one state should be proved in another.

In the case of *The State of Ohio ex rel. Hinchman vs. Hinchman,* 5 Am. Law Reg., 424, the supreme court of Pennsylvania held that they were bound in a suit on a record from Ohio, to take notice of the laws of Ohio.   The reason given is, that it was a question arising under the constitution and laws of the United States, that if its decision should be against the right claimed, it would be reviewable by the U. S. Supreme Court, and that court would take notice of the laws of Ohio; and to avoid so discordant a proceeding as to have the court of original jurisdiction decide according to one rule, and the appellate court according to another, the court of Pennsylvania held that it was also bound to take notice of the laws of Ohio.

This is a novel and somewhat circuitous method of reasoning, and I confess the conclusion does not seem to me to follow from the premises.   For even conceding the appellate jur-

Rape vs. Heaton.

isdicton here asserted, it does not follow that the U. S. supreme court would be entitled to hold that the states occupy the same relations to each other, that they do to the Federal Government, or that it does to them. And if they do not, and the court of Pennsylvania was not bound to take judicial notice of the laws of Ohio, but in the absence of any proof on the subject was entitled to presume them to be in accordance with its own, it would seem that the appellate court in reviewing its decision should act upon the rule by which the state court was authorized to decide. And if by this rule there was any failure in executing the judgment according to the laws of Ohio, it should be held to arise from the default of the party relying on the record, in not producing to the state court the necessary proof as to what those laws were, and not from any denial of a right secured by the constitution or the laws of Congress. I think therefore that this case furnishes no sufficient reason for holding that the courts of one state are bound to take notice of the laws of another.

On the contrary, I think this should be determined by those principles which have been settled as applicable to other questions. The relation of the states to each other as to matters not surrendered to the general government, is correctly stated in 1st Greenleaf's Ev., § 489, as "those of *foreign states in close friendship.*" And whatever relaxation this "close friendship" ought to induce, or may have induced in the strict rules of proof, yet it is there said that, "upon strict principles of evidence, the laws and public documents of one state can be proved in the courts of another, only as other foreign laws." And whatever relaxation of the rule has occurred, has been directed to the method of proof, without it ever having been suggested that it was incumbent on the courts of one state to dispense with proof entirely, and take judicial notice of the laws of another. Such being the general rule, as I have already endeavored to show that there is nothing

in the constitution or act of Congress which requires it, I see no reason for holding that the laws of other states should be ascertained in a different manner when deciding on the effect of a record, from that in which they are ascertained in other cases. And that the true rule is, that in such cases, courts are not bound to take actual notice of the laws of other states, in the absence of all proof, but may presume them to be in accordance with their own. So that wherever any difference is relied on, it is incumbent on the party relying on it, to prove such difference for the information of the court.

And this view we believe to be sustained by the authorities. In addition to those already cited, the following may be referred to. In *Pelton vs. Platner*, 13 Ohio 209, the court mingling, perhaps, some deserved sarcasm with its law, remarks: "This court is not bound to take notice *ex officio* of the laws of other states, and it is no enviable task to keep pace with the Solons of our own. When a question depends on the laws of a sister state, in our courts, such laws are a part of the evidence in the case, and like another fact must be proved by him who holds the affirmative."

In *Horton vs. Critchfield*, 18 Ill., 133, the question being whether a party who had been sued before a justice in Ohio, and appeared and defended and obtained judgment in his favor, from which an appeal was afterwards taken, of which he had no notice, was concluded by the judgment against him on the appeal; the court held that the fact of judgment being rendered on the appeal was *prima facie* evidence of jurisdiction, and if the party desired to rebut it, he should show that the laws of Ohio required another service on the appeal.

In *Draggoo vs Graham*, 9 Ind., 212, involving a record from Ohio, the court says: " In the absence of proof of the law of Ohio, at the date of the judgment we might have to presume it to be the same as our own." These cases are

referred to as applying the general rule in regard to the proof of the laws of other states, to cases involving the effect of records, and we can perceive no reason for making any distinction.

Applying these conclusions to this case, we think the court below, in the absence of any legal proof as to what were the laws of Pennsylvania, should have presumed them to be in accordance with our own. And if, on that presumption the record was sufficient, it would have devolved on the defendants to have shown it actually otherwise by the law of Pennsylvania. If insufficient, the burden would have been on the plaintiff. We think it was insufficient, for the reason already stated, that the return shows that there was no legal service of the process.

The return is in these words: "I have served this writ on *defendant*, Peter Rape and William Rape, by leaving *a* certified copy with *his* family, in their residence, on the 15th day of April. John Forker, sheriff."

It is true this return contains the names of both defendants, but with that exception the entire return indicates but a single service, which was by leaving a certified copy with the family of one of the defendants, but which one does not appear. This was clearly no service as to the other, and if sufficient as to one, the return, not showing which one, would be void for uncertainty. But there was no legal service made. The copy left was left " with his family." This would be true if left with a child or other person without discretion. All laws with which we are acquainted, providing for this mode of service, require the copy to be left with some person of suitable age and discretion. And such, were the inquiry to be made, would seem to have been the law of Pennsylvania. We are bound to presume, therefore, that the courts of that state would hold the service set forth here, insufficient to confer jurisdiction over the parties.

There can be no doubt that where the manner of service is set forth in the record presented, the court may look into it to see whether it conferred jurisdiction. The case of *Ewen vs. Coffin,* before cited, fully sustains this position.

It was suggested on the argument that the defendants resided in Pennsylvania, and were, therefore, bound by the record. But we apprehend that the question of residence is in no case material, except as a step in determining the jurisdiction of the court. It is this latter jurisdiction which makes the judgment conclusive—not mere political subjection to the sovereignty where it was rendered. T he latter is material only as it bears upon the former. If a citizen of one state goes into another, and is there served with its process, he is bound by the judgment, though he did not reside there. And this was held in *Bissell vs. Briggs.* And, on the other hand, if a judgment is rendered in a state against one of its own citizens, and the record showed that the court had no jurisdiction over him, he would not be bound by it, though he did reside there. The view we have taken of this record renders the question of residence, therefore, immaterial.

We have also great doubt whether the record here presented should be sustained as the record of a judgment It shows the issuing of the writ, the return, and then there is a docket entry that " the court grant judgment." This was, doubtless, the point where interlocutory judgment on default should have been entered, but what the judgment was does not appear. There are, then, the proceedings of the sheriff's jury in assessing damages, which resulted in a finding that the plaintiff sustained damages, stating the amount, followed by a docket entry that " the court grant judgment on the finding of the inquest." But what is the judgment? Was it against one or both of the defendants? This the record does not show. It consists only of the docket entries, showing that

Rape vs. Heaton.

judgment was probably ordered by the court, but not showing any record of the judgment itself.

In *Lincoln vs. Tower*, 2 McLean, 479, the court says: "When any court is called to receive as evidence the record of a judgment, foreign or domestic, its form and substance must necessarily be examined. Not, it is true, as a court of errors, but to see that it is what it purports to be, the record of a judgment."

In *Hill vs. Tiernan & Maslin*, 4 Missouri, 316, the record offered showed similiar entries by the clerk, but it was held not to amount to the record of a judgment.

In *Fitch vs. Dayton*, 8 Iredell, 511, the court held that in an action on a record, the party must produce a copy of the judgment itself, and that a *scire facias* to revive it, showing execution issued on it, was not sufficient. And in *Leveringe vs. Dayton*, 4 Wash. Cir. Ct. Rep., 698, the court held a record of the docket entries not sufficient. The judge says, " I do not say that the record need be made out with the same precision in matters of form, as if it were to accompany a writ of error to a superior court; but the proceedings should be stated, and the judgment ought to have, substantially at least, the form of a judgment."

We think there is serious doubt whether, under this rule, the record here offered is entitled be considered a judgment record. But as it is not necessary to determine the question in this case, we shall leave it to be settled when such necessity may arise.

The judgment must be reversed, and the cause remanded for a new trial.

DIXON, C. J., took no part in the decision of this case, the same having been tried before him at the circuit.