Toepfer vs. Lampert and another.

TOEPFER, Assignee, Respondent, vs. LAMPERT and another, Appellants.

*February 25 — March 14, 1899.*

*Voluntary assignment: Filing of papers: Sheriff's return: Conclusiveness.*

1. Although sec. 1695, R. S. 1878, provides that the assignee's bond, together with a copy of the assignment, shall be filed by the officer taking the same in the office of clerk of the circuit court, the manual filing of the paper by a messenger, instead of by the officer himself, will not avoid the assignment, if the papers are in all other respects properly executed and are filed in proper time.

2. The rule that a sheriff's return upon execution as to his official acts done thereunder is conclusive upon the parties to the action and their privies does not preclude an assignee for the benefit of the creditors of an execution debtor from showing, in contradiction of the return, that the levy was not in fact made until after the filing of the assignment, because if the assignee's title accrued before the levy he is not a privy and not bound by the return.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

This is an action of trover to recover the value of a stock of hardware. The plaintiff is the assignee under a voluntary assignment made by J. C. Koelsch, for the benefit of his creditors. Koelsch owned the stock of hardware in question, and on the 17th of February, 1897, executed a voluntary assignment to the plaintiff before Wesley Mott, a court commissioner at Menasha, Wisconsin. Mott did not take the assignment and bond personally to the clerk of the court at Oshkosh, but intrusted them to one J. M. Pleasants, an attorney, who had been the attorney of Koelsch in drawing the papers, to take them to Oshkosh and file, indorsing upon the papers a written request to the clerk to file the same. The papers were placed on file at three minutes past 1 o'clock on the 17th of February, 1897. On the same day

judgment upon a judgment note given by Koelsch to the John Pritzlaff Hardware Company was duly entered, and at 11:20 o'clock in the forenoon the execution thereon was delivered to the defendant *Florian*, who was then the sheriff of Winnebago county. He immediately proceeded to Koelsch's store, but did not find Koelsch there, he being engaged in preparing the assignment. He stayed at the store some twenty minutes or more, but did not exhibit his writ nor state to the clerk that he made any levy, and the business apparently went on as usual. A few minutes before 12 o'clock noon, Koelsch and *Toepfer* went to the store and found *Lampert* there. Some conversation took place, but what that conversation was is disputed; *Lampert* testifying that he told Koelsch that he had an execution and had levied on the stock, but Koelsch testifying that *Lampert* said he had not yet taken possession. Koelsch and *Lampert* went to an hotel, and took dinner with the attorney of the judgment creditor, leaving *Toepfer* at the store, who locked it and took the key. After dinner *Lampert* found the store locked, and then posted notices on the outside announcing that he had levied on the stock therein, and later in the afternoon broke open the door. Thereafter *Lampert* proceeded to sell out the stock and apply the proceeds upon his execution. He also made a return upon the execution, in which he stated that he levied upon the stock at 11:20 o'clock a. m.

A special verdict was returned by the jury as follows: " (1) Did the sheriff, by his deputy, *Matt Lampert*, levy upon and seize the goods in controversy on the 17th of February, 1897, under the execution, before the hour of one o'clock and three minutes in the afternoon? *A.* No. (2) At what time were the notices of levy posted on the doors of the two stores? *A.* 1:15 p. m. (3) What was the fair market value, at Menasha, Wisconsin, February 17, 1897, of the goods in controversy? *A.* $1,550." Upon this verdict judgment was rendered for the plaintiff, and the defendants appeal.

For the appellants there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper* and *Wheeler P. Bloodgood,* counsel, and oral argument by *J. B. Kemper* and *C. W. Felker.*

For the respondent there was a brief by *Bouck & Hilton* and *J. M. Pleasants,* and oral argument by *Mr. Pleasants* and *Mr. Gabe Bouck.*

Winslow, J. Two important questions are presented in this case, namely: (1) Was the assignment void because the officer taking it did not personally take it to the clerk's office and file it? (2) Was the sheriff's return as to the time he made his levy conclusive on the plaintiff in this action.

1. The statute provides (sec. 1695, R. S. 1878) that the assignee's bond " shall immediately after its execution, together with a full and true copy of such assignment, be filed *by the officer taking the same* in the office of clerk of the circuit court," etc. It is argued that this provision is strictly mandatory, and that the court commissioner must with his own hand deliver the bond and copy of the assignment to the clerk, and cannot intrust the same to a messenger. This precise question has not been heretofore decided by this court, though several of the other provisions of secs. 1694–1696, R. S. 1878, have been presented, and have uniformly been held mandatory. See *Grever v. Culver,* 84 Wis. 295, where the authorities are reviewed. In *Fuhrman v. Jones,* 68 Wis. 497, the commissioner sent the bond and copy of assignment to the clerk's office by the hand of the assignee, and without his indorsement thereon showing that he was satisfied with the sufficiency of the sureties. Some ten days later the commissioner called at the clerk's office, and placed his certificate on the bond, but, certain creditors having attached in the meantime, it was held that, as against creditors, title had not been vested in the assignee at the time of the levy of the attachment. There is no discussion in that case as to

what effect the fact, alone, of the failure of the commissioner to personally file the papers was considered to have upon the judgment, and we do not think it can be fairly said that the point was determined in that case.

Since these cases were decided, however, a distinct change has taken place in legislative policy regarding the assignment statutes. Under the provisions of sec. 2, ch. 334, Laws of 1897 (now sec. 1694, Stats. 1898), the legislature has made ample provision for the correction of almost every possible error, defect, or informality in the execution or filing of the assignment and accompanying papers. Among other things it is provided that "no mistake in filing a copy instead of an original, or any like mistake or inadvertent failure to comply with the provisions of the chapter, shall avoid the assignment." Thus it is manifest that the legislative policy at the present time is distinctly in favor of the carrying out of voluntary assignments, even though some provision of law has not been fulfilled. They are regarded with favor, and every opportunity is now given to make them effectual, even if technically defective. This change of legislative policy is referred to and recognized in *Western T. Co. v. Teasdale*, 97 Wis. 652; and in *Eau Claire G. Co. v. Hubbard*, 97 Wis. 661, in which last case it is said that where "the trend of legislation is such as to show a manifest purpose to secure an equal distribution of the property of insolvents, wherever they in good faith make a conveyance of all their property with that intention, the court so far as possible should carry out such legislative policy."

In view of this manifest change of legislative policy, we hold that the manual filing of the assignment papers by a messenger, instead of by the officer, will not avoid the assignment, where it appears, as in this case, that the papers were in all other respects properly executed and filed in proper time.

2. The fact was undisputed in the case that the assignment

Toepfer vs. Lampert and another.

papers were filed in the clerk's office at 1:03 o'clock p. m. The sheriff made his return upon his execution, in which he certified that he levied upon the property at 11:20 o'clock a. m., and it was claimed below and is claimed here that this return is conclusive in this action and cannot be contradicted. The trial court ruled, however, that it was open to contradiction, and much evidence was introduced as to the time when the sheriff's levy was actually made, resulting in a verdict that it was not made until after the filing of the assignment. The reception of this evidence is now assigned as error. The rule is frequently broadly laid down that the return of a sheriff upon process in his hands as to his official acts properly done thereunder is conclusive upon the parties to the action and their privies, and cannot be collaterally impeached, but must be set aside, if at all, in some direct proceeding brought for the purpose. Murfree, Sheriffs (2d ed.), § 868, and cases cited. The rule is referred to with approval in *Knowlton v. Ray*, 4 Wis. 288, and recognized as correct in *Carr v. Comm. Bank*, 16 Wis. 50. But an exception to the rule has been made in the cases of *Rape v. Heaton*, 9 Wis. 328, and *Pollard v. Wegener*, 13 Wis. 569, where it is substantially decided that the return may be contradicted when the question of jurisdiction of the party arises, and it may be shown that jurisdiction was never in fact obtained, notwithstanding recitals to that effect in the record. *St. Sure v. Lindsfelt*, 82 Wis. 346. The principle is that the record is no record unless the party to be bound by it was served with process, and this fact is open to investigation. So, here, it may be admitted that the sheriff's return as to the time of his levy is conclusive upon the parties to the action and their privies; but the question is, Was the plaintiff a privy? If the assignment was filed, and he had possession, before any levy was made, then he was not a privy, because his title accrued before the sheriff's levy, and he would not be bound by anything the sheriff might say in his return.

Now, to say that the plaintiff is bound by the return because he is a privy, and that he is a privy because the return says that he is such, is the same circular reasoning which is condemned in *Rape v. Heaton, supra.*

While the rule is that parties and privies are bound by the return, the question as to whether a given person is in fact a privy must be open to investigation, upon the same reasoning that holds that the question of jurisdiction is open.

Some exceptions were taken to the charge of the court upon the question as to what acts were necessary to constitute a valid levy. We have examined the charge, and think that it is substantially correct upon the question. It does not seem necessary to insert the charge here.

*By the Court.*— Judgment affirmed.

Dodge, J., dissents.