ARAPAHOE STATE BANK, Appellant, vs. HOUSER, Respondent.

*December 8, 1915—January 11, 1916.*

*Service of summons: Return of officer: Impeachment.*

1. An officer's return showing service of a summons can be overcome only by the most clear and satisfactory evidence to the contrary.
2. Mere denial of service by the interested party is not ordinarily sufficient to overcome the officer's return, especially when that return is supported by the officer's testimony.
3. In this case the return being supported by the officer's positive, consistent testimony as to the circumstances thereof and corroborated by many other circumstances, and impeached only by the denial of the interested defendant, a finding of the trial court that the summons was not served on such defendant is *held* to be contrary to the clear preponderance of the evidence.

APPEAL from a judgment of the circuit court for Buffalo county: GEORGE THOMPSON, Circuit Judge. *Reversed.*

Action to recover on a judgment of a court of competent jurisdiction in the state of Nebraska.

The claim of the plaintiff is this: March 12, 1912, it commenced an action against defendant in a court of general jurisdiction in Lancaster county, state of Nebraska. Serv-

ice of the summons was duly made on, and the court obtained jurisdiction of, said defendant according to the laws of said state of Nebraska, and he appeared by attorneys, in due course, in said action. Such proceedings were thereafter duly had therein that, February 20, 1913, judgment was duly rendered against the defendant for $774.95 which has not been paid, set aside, or stayed and remains in full force. Judgment for the amount due thereon with costs was demanded.

The defendant answered to this effect: The alleged Nebraska action arose on a pretended contract. When it is said to have been commenced, he was a nonresident of the state of Nebraska. He was neither personally served with the summons in said action, nor appeared therein. The alleged appearance was wholly without his authority.

Repeating the foregoing, defendant further answered to this effect: Before the Nebraska judgment was rendered, the attorneys who had, in form, appeared for defendant, by leave of the court, withdrew their appearance, which, under the laws of that state, left the court without jurisdiction of the person of defendant.

Upon the evidence, the court found as facts, among others, these: When the attempt was made to commence the Nebraska action, defendant was, and had been for many years, a resident of Wisconsin. The law of the state of Nebraska provided that service of a summons to commence an action should be made by delivering a copy thereof to the defendant, or leaving it at his usual place of business before the return day. No attempt was made to make service on defendant, personally, and he had no usual place of residence in Nebraska. He was advised by a reputable firm of practicing attorneys in Lancaster county, Nebraska, that no jurisdiction had been obtained to render judgment against him and he then directed them to protect his interests. Without further directions, such firm appeared, in form, in defendant's

behalf, demanded security for costs, which was duly given, and demurred to the complaint. The demurrer was overruled. Thereafter Mr. Whedon, the attorney who had charge of the action for defendant, died. His surviving partner, Mr. Peterson, February 20, 1913, was granted leave by the court to withdraw the appearance, which was done, and, without any new appearance on the part of defendant, judgment was rendered against him. Under the law of the state of Nebraska, such withdrawal left the case the same as if no appearance had been made therein.

Upon such facts the trial court concluded that the Nebraska court had no jurisdiction to render the judgment sued on, and directed a dismissal with costs. Judgment was rendered accordingly.

For the appellant there was a brief by *Frank C. Richmond,* attorney, and *Morning & Ledwith,* of counsel, and oral argument by *Mr. Richmond.*

For the respondent there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *Sam T. Swansen.*

MARSHALL, J. This appeal, primarily, must turn on whether the Nebraska court obtained jurisdiction of the person of respondent by the officer, charged with the duty of serving the summons having done so "by delivering a copy of such summons to him, personally." Appellant contends that the finding in respondent's favor in respect to that matter is contrary to the clear preponderance of the evidence. If such contention have sufficient support in the record, none of the other matters, discussed in the briefs of counsel, need be considered.

We must view the evidence in respect to the challenged finding in the light of the well settled principle that the return of an officer as to his having made service of a summons on the defendant therein named, is evidence of more than ordinary dignity, and cannot be overcome except by most

clear and satisfactory proof. In general, the mere denial under oath by the defendant claimed to have been served, is not sufficient to defeat the officer's return. This court spoke decisively on that in *Ill. S. Co. v. Dettlaff,* 116 Wis. 319, 93 N. W. 14.

In the case cited, the court said that the showing must be "most satisfactory" in order to overcome an officer's return. Without going so far as to hold that a mere denial under oath by the defendant of the service will not satisfy the call for such "most satisfactory showing," it was, in effect, held that any circumstantial evidence worthy of consideration in support of the return, is sufficient to preclude such mere denial from prevailing.

Here, in support of the return, the officer testified, stating all the circumstances of the service, which agree, in many respects, with the evidence of respondent. The evidence of the officer seems to have been very fairly given on his direct examination and not to have been weakened at all by cross-examination. He said, substantially, this: I made personal service of the summons upon *Mr. Houser* on the 27th day of March, 1912, in his room at the Lindel Hotel in the city of Lincoln, Lancaster county, Nebraska. I went to the door of his room, accompanied by the bellboy, who called him to unlock the door. I stepped into the room and handed him a certified copy of the summons. He had just gotten out of bed and was in his night clothes. He took the copy of the summons and was quite angry at being called out at that time in the morning. If he says he did not receive a copy of the summons from my hands, but that I left it outside the door, or on the door knob, he states a falsehood, because I was in his room and handed him a copy in person.

Respondent testified substantially like this: Quite early in the morning, while I was at the Lindel Hotel in Lincoln, Nebraska, before I got up, a rap came at my door. I asked who was there and did not get a satisfactory answer. They

rapped again and I was just out of bed—not out of bed—
and I am not clear what I said. Anyway, he said a man
wanted to see me. I asked again what he wanted and he
said he had a paper for me, or a summons—I don't know
which—and I replied something like this: "Well wait until
I am up" or "Wait awhile,"—something of that kind,—and,
finally, the man said he would leave the paper there for
me,—told me it was a summons, and he left it outside the
door, sticking under the door or between the knob and the
casing. When I got up, I found it there. I picked up the
paper, read it, and took it to Mr. Whedon, an attorney, with
whom I was acquainted, and told him the facts. I employed
him to help me in the suit. He advised me that the service
was not good for the reason I told him, and for other reasons,
and I said "Mr. Whedon, I have got to leave. I want you
to take charge of it and represent my interests in the case."

The points of agreement between the evidence of Mr.
Houser and that of the officer are many. The former's lan-
guage "they rapped again" corroborated the latter's that he
did not make his visit to Mr. Houser's room alone. The two
agreed as to the time of the visit, as to the officer making
plainly known what his visit was for, as to the summons ac-
tually reaching the hands of Mr. Houser, and as to his being
very indignant because of the early call and the reason there-
for. The only disagreement is as to whether the officer en-
tered Mr. Houser's room and handed him the paper, or left
it at or sticking in the door after he showed a disposition not
to afford a present opportunity to hand it to him.

The circumstance that Mr. Houser told his attorney to
help him in the suit, to take charge of it and represent his
interests in the case, rather suggests the existence of a case
wherein service of the summons had been made. A some-
what similar circumstance was regarded as quite significant
in Ill. S. Co. v. Dettlaff, supra. The further circumstance
that Mr. Houser's attorney, after having been "told the facts"

and given the directions before indicated, appeared, generally, in the case, and was active in proceedings therein in all respects as if service had been regularly made, is quite significant. The evidence indicates that he was a reputable attorney, a friend of *Mr. Houser's,* and understood his business. If the facts told to him were to the effect that no personal service had been made, he, naturally, would have appeared, specially, and moved to dismiss for want of jurisdiction of the person of defendant. The course he did pursue is consistent only with the theory that, from "the facts told him," he understood that service had been made according to the return of the officer.

The further circumstance that no attempt was made to withdraw the appearance made by Mr. Whedon until after he died, and that it remained effective on the record for nearly a year, and the additional circumstance that no attempt was made, at any time, in the Nebraska court to question its jurisdiction, tends to weaken the evidence of *Mr. Houser* and corroborate that of the officer.

In view of the whole situation as above detailed, and the fact that the burden of proof was on respondent to prove that the summons was not served on him as indicated in the officer's return,—to overcome such return so completely as to leave little or no doubt as to its falsity,—we are inclined to hold that the evidence of *Mr. Houser* cannot fairly be regarded as of sufficient weight to satisfy such requirement. If an officer's return of service, supported by his positive, consistent evidence of the circumstances thereof, and supported by many other circumstances, and not impeached by any evidence except the mere denial under oath of the service by the interested defendant, could be defeated, judgments, especially those rendered in foreign jurisdictions and required to be enforced, as in this case, would be subject to very serious infirmity.

The only safe way is to adhere, pretty strongly, to the rule

that an officer's return of service must prevail until shown to be false by the most clear and satisfactory evidence, and that, ordinarily, the mere denial of service by the interested party is not sufficient therefor, especially so when the return is supported by the officer's evidence, as in this case. That is the general rule as stated by text-writers. In 18 Ency. Pl. & Pr. 984, it is thus given: "In whatever form the impeachment of a return is presented, it requires the clearest and most satisfactory evidence to overcome the statements thus made under the sanction of official oath and responsibility." To that cases are cited from many jurisdictions including *Wilson v. Shipman,* 34 Neb. 373, 52 N. W. 576, where the officer's return was corroborated by his evidence very much as in this case, and it was held that the evidence of the defendant was not sufficient to defeat it.

After careful review of the record, it is considered that the trial court's finding as to the summons not having been served upon respondent, is contrary to the clear preponderance of the evidence.

*By the Court.*—The judgment is reversed, and the cause remanded for judgment according to the prayer of the complaint.

BARNES, J. (*concurring*). I concur in the result, but on the ground that the general appearance made by *Mr. Houser's* attorney waived all questions concerning the regularity of the service. The court having obtained jurisdiction of *Mr. Houser's* person by this appearance, I do not think it divested itself of jurisdiction by permitting the appearance to be withdrawn long after it was made.