DAVIS, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 10—May 12, 1925.*

*Searches and seizures: Return on warrant: How overcome: Non-intoxicating liquors: Pop and ginger ale.*

1. A search warrant issued on a complaint made on information and belief is void. p. 119.
2. Even though the return on the search warrant is not conclusive on the state that a raid was not made pursuant to the warrant (a question not necessary to decide in this case), the return of the sheriff to the search warrant can be overcome only by the most clear and satisfactory evidence to the contrary. p. 120.
3. Where the sheriff's return to the search warrant, which was void, stated that certain premises were searched by reason of the warrant, and that certain moonshine was brought into court as the evidence obtained, the testimony of officers that the raid was made because the premises constituted a disorderly place was insufficient to show that the liquor was not obtained by virtue of an unlawful search and seizure, and hence the admission of such liquor in evidence was error. p. 120.

4. In view of the failure of the legislature to make any change in
   sec. 165.01, Stats., after this court had expressed a doubt
   whether ginger ale and pop containing alcohol were non-
   intoxicating liquors within the meaning of such statute, the
   court must give such statute its literal application; and it is ·
   therefore *held* that any drink, no matter how harmless it may
   be generally regarded, containing any degree of alcohol, falls
   within the statutory definition of "non-intoxicating liquor,"
   and that the sale of such liquor without a license constitutes
   an offense.  p. 122.

ERROR to review a judgment of the circuit court for
Winnebago county: FRED BEGLINGER, Circuit Judge. *Re-
versed.*

Plaintiff. in error (hereinafter called the defendant) was
convicted of having in his possession and selling intoxicating
liquor and also of selling at retail non-intoxicating liquor
without a license.  It appears that on the 23d day of Febru-
ary, 1924, a search warrant to search the premises of de-
fendant, said premises being located in the outskirts of the
city of Oshkosh, was issued by the clerk of the municipal
court of Winnebago county, upon complaint of an under-
sheriff, which complaint was made upon information and
belief.  Between 11 and 12 o'clock on the night of February
23d the under-sheriff with four deputy sheriffs proceeded
to the premises described in the search warrant.  They
parked their automobile some distance from the premises,
and one of the deputies, by the name of Brown, entered
defendant's place of business.  He found a number of men
and women sitting in the place, and an ordinary old-fash-
ioned bar, back of which was a bartender.  He testified that
there was no noise or disturbance and that, so far as he
could see, none of the occupants were intoxicated.  He pro-
ceeded to the bar, asked the defendant if he had any moon,
the defendant said "Yes," and instructed the bartender to
serve Brown with a drink of moon.  The bartender poured
some liquor from a bottle into a glass, gave it to Brown, and
Brown laid down a five-dollar bill.  The bartender took the

five-dollar bill, put it in the till, and laid four dollars and seventy-five cents in change on the bar in front of Brown. About this time, and before Brown had drunk the liquor, a knock came upon the door, which was locked. Immediately the door was broken open and Brown's four associates entered the place. The defendant, according to Brown's testimony, exclaimed "Police! dump it!" and knocked the glass containing the liquor from Brown's hands. Upon the entrance of the officers there followed much excitement, during which time the stove was kicked over. The officers arrested every one in the place and took them to the county jail. Brown testified that after the occupants had been removed from the place the under-sheriff told him to return and make sure that they had gotten every one; that in obedience to such order he returned to the room, and in an effort to make sure that no one had been left he opened and looked into the ice box, where he discovered a bottle containing moonshine whisky, which he took with him. At the county jail all persons arrested were questioned except the defendant, his bartender, and another man with whom the officers were not acquainted. The bottle of moonshine was sealed and labeled with the signatures of the five officers.

Under date of February 23d the under-sheriff returned the search warrant into court with the following certificate: "I hereby certify that by virtue of the within writ I have duly searched the within premises and herewith bring into court the evidence, namely, moonshine, and that I duly arrested *Luther Davis,* the occupant of said building."

The district attorney filed an information against the defendant, three counts of which charged him with violation of the prohibition laws with respect to the possession and sale of intoxicating liquors, and one count charging him with the sale of non-intoxicating liquor without a license.

Upon the trial the officers testified that their raid upon the premises was not made by virtue of the search warrant,

but that they broke into the building and arrested the occupants because it was a disorderly place. The bottle of moonshine was introduced in evidence over the objection of the defendant, and the court charged the jury:

"If you find from the evidence beyond a reasonable doubt that the said deputy sheriff Brown did not participate in any search ordered or made by virtue of said search warrant, but seized said bottle of liquor by his own independent action and wholly without reference to such search warrant, then you have the right to consider whether the defendant with knowledge on his part had in his possession on said premises at the time and place alleged in the fifth count the said bottle and the contents thereof."

The court thus left to the jury the question of whether the officers had secured possession of the bottle of moonshine by virtue of the illegal search warrant or whether it had come into their possession as an incident to a lawful entry made by them upon the premises of the defendant for the purpose of suppressing a disorderly place. It should be said, also, that the charge made it clear that if the jury found that the bottle was secured pursuant to a search made under and by virtue of the search warrant they could not consider it as evidence, otherwise it might be so considered.

To review the sentence and judgment of the court pronounced upon the verdict of the jury the defendant brings this writ of error.

For the plaintiff in error there was a brief by *Reilly & O'Brien* of Fond du Lac, and oral argument by *J. E. O'Brien.*

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *D. K. Allen,* district attorney of Winnebago county, and oral argument by *Mr. Allen.*

OWEN, J. The search warrant was issued upon a complaint made upon information and belief. It was issued

prior to the decision of this court in *State v. Baltes,* 183 Wis. 545, 198 N. W. 282, where this court held that a search warrant so issued was void. It is perfectly apparent that in the trial of this case the State endeavored to avoid the consequences of that decision by an attempt to show that the search was not made pursuant to the search warrant and that the officers entered the premises because it was a disorderly house, as they had a right to do under *Hawkins v. Lutton,* 95 Wis. 492, 70 N. W. 483. We have carefully considered the evidence in this case and we regard the attitude of the State as nothing more nor less than a flimsy and transparent attempt to avoid the consequences of the decision of this court in *State v. Baltes,* 183 Wis. 545, 198 N. W. 282, where this court held that a search warrant so issued was void.

It will be noted that the search warrant was issued at a time when it was not uncommon for search warrants to issue upon a complaint made upon information and belief, that the raid was made the very day of its issue, and that the return of the officer showed that they had searched the premises of defendant described in the search warrant, had found therein a bottle of moonshine whisky, and pursuant to said search warrant had placed the defendant under arrest. There is much authority for the proposition that this return is conclusive upon the State that the raid was made pursuant to and by virtue of this search warrant. 2 Ency. of Ev. 974, and many cases there cited.

In *Toepfer v. Lampert,* 102 Wis. 465, 469, 78 N. W. 779, concerning the evidentiary force of the return of an officer to process, the court said:

"The rule is frequently broadly laid down that the return of a sheriff upon process in his hands as to his official acts properly done thereunder is conclusive upon the parties to the action and their privies, and cannot be collaterally impeached, but must be set aside, if at all, in some direct proceeding brought for the purpose. Murfree, Sheriffs (2d ed.) § 868, and cases cited. The rule is referred to with approval

in *Knowlton v. Ray,* 4 Wis. 288, and recognized as correct in *Carr v. Commercial Bank,* 16 Wis. 50. But an exception to the rule has been made in the cases of *Rape v. Heaton,* 9 Wis. 328, and *Pollard v. Wegener,* 13 Wis. 569, where it is substantially decided that the return may be contradicted when the question of jurisdiction of the party arises, and it may be shown that jurisdiction was never in fact obtained, notwithstanding recitals to that effect in the record."

And even where the question of jurisdiction arises, it is the rule of this court that an officer's return showing service of a summons can be overcome only by the most clear and satisfactory evidence to the contrary. *Arapahoe State Bank v. Houser,* 162 Wis. 80, 155 N. W. 906. Although we do not find that the rule that the return of an officer to the process of a court is conclusive has ever been applied in this state, there is much authority to support it, and its correctness has been specifically recognized by this court in the cases cited. It is unnecessary to apply it here because the proof offered by the State relied upon to impeach the return to the search warrant falls far short of that clear and satisfactory character required to impeach an officer's return even where questions of jurisdiction are involved.

We think it clear that the bottle of moonshine came into possession of the State by virtue of an unlawful search and seizure, and the court should have excluded it from evidence. While the evidence of Brown concerning his purchase of moonshine, together with that of another witness who testified that she ordered wine and was served with a drink that tasted and looked like wine, might have been sufficient to sustain a verdict of guilty, it cannot be said that the reception of the bottle of moonshine whisky in evidence did not constitute prejudicial error. The conviction of the defendant upon the grounds relating to the possession and sale of intoxicating liquor, therefore, must be reversed.

The defendant also complains that he was erroneously convicted upon the counts charging unlawful possession and sale of non-intoxicating liquor. There was a prior trial of

this case upon which the defendant testified that he sold at his place of business pop and ginger ale manufactured by certain concerns in Oshkosh. His testimony in this respect was read in evidence upon this trial. A chemist testified in behalf of the State that he was familiar not only with the product manufactured by these concerns but with their method of manufacture, and that their product not only contained alcohol but that the ginger ale and pop could not be manufactured in the manner followed by those concerns without producing an alcoholic content in the product. We think this evidence was sufficient to justify a finding that the pop and ginger ale which the defendant admitted he sold contained an alcoholic content. Sec. 165.01, Stats., provides that "The words 'non-intoxicating liquor' include all liquors, liquids or compounds, whether medicated, proprietary, patented, or not and by whatever name called, fit for use for beverage purposes, containing alcohol in any degree, not defined to be 'intoxicating liquors.' "

In *Alby v. Smith*, 178 Wis. 138, 189 N. W. 493, we declined to pass upon the question whether ginger ale or other similar drinks constitute non-intoxicating liquor within the meaning of this statute. We there said: "It is difficult to exclude them from the express terms of the statute. On the other hand, it is difficult to conceive that the legislature had them in mind in enacting this legislation, the primary purpose of which was to prohibit the traffic in intoxicating liquors." Not only the evidence in this case but the evidence before us in *Alby v. Smith* showed that such drinks do have an alcoholic content and that they come within the literal provisions of the statute. The decision in *Alby v. Smith* was rendered in 1922. Since that time there have been two sessions of the legislature. That decision was notice to the legislature that it was at least a doubtful question whether such drinks fall within the provisions of the statute. The failure of the legislature to make any change in the statute indicates its satisfaction with the provision as it exists. It

therefore must be given its literal application, and we must hold that any drink, no matter how harmless it may be generally regarded, containing any degree of alcohol falls within the statutory definition of non-intoxicating liquor. The sale of such liquor without a license constitutes an offense, and defendant's conviction upon that count of the information must be affirmed.

*By the Court.*—Judgment reversed as to the first and fifth counts of the information, and the cause is remanded for a new trial as to such counts. As to the third and fourth counts the judgment is affirmed.